## JOHN M. EAGON v. FLORA E. EAGON.

### No. 11199.

1. ALIENATION OF AFFECTIONS — *Self-serving Declarations — Res Gestæ.*  In an action by a wife against her father-in-law for alienating the affections of her husband, the plaintiff offered testimony of the declarations of the defendant to his son, during the time that she alleged that he was accomplishing the alienation, to the effect that he did not desire his son to live with plaintiff, and that he would not give him any money if he continued to do so, etc. Defendant denied these statements, and by his own and other testimony sought to show that during the period mentioned he had told his son at different times to bring his wife to defendant's home, and that he ought to live with her.  *Held,* that such declarations were inadmissible as self-serving, and not part of the *res gestæ.*  (SMITH, J., dissenting.)

2. PRACTICE, DISTRICT COURT — *Offer of Proof.*  In order to enable a trial court to determine whether facts sought to be proved by a witness are admissible in evidence, it is proper to make an offer to prove the facts which the party assumes that his question will elicit.

3. ALIENATION OF AFFECTIONS — *Question of Malice — Improper Instruction.*  The court instructed the jury on behalf of the plaintiff as follows: "A parent is not liable in damages to his son's wife for advising the son to separate from his wife, if such advice be prompted by the proper parental motives for his son's welfare and happiness, instead of malice; but you are further in-

structed that such advice will be malicious toward the son's wife and no protection to the parent, unless the wife was guilty of acts which could be charged as grounds for divorce against her." *Held*, error; that in all such cases the question of malice is for the jury to determine; that the liability of the defendant cannot be made to depend upon the non-existence of grounds for divorce in favor of the husband against the wife.

Error from Osage district court; WILLIAM THOMSON, judge. Opinion filed July 8, 1899. Reversed.

*Robert C. Heizer*, for plaintiff in error.

*David Overmyer*, for defendant in error.

The opinion of the court was delivered by

SMITH, J.: In her petition in the court below Flora E. Eagon alleged that on December 17, 1894, she was married to James S. Eagon; that she lived happily with him, without discord or disagreement, until October 10, 1895, when the defendant John M. Eagon, father of her husband, by means of misrepresentations, statements and inducements then and previously made to his son, purposely, wilfully and maliciously procured his son to separate himself from plaintiff, to neglect his marital duties, and wholly to cease to live with her, thus alienating the affections of her husband from her and causing a permanent separation. A trial was had, with a verdict and judgment for the plaintiff below. She produced at the trial witnesses to conversations had by the defendant John M. Eagon with his son, her husband, wherein the defendant below had made promises to and threats toward his son, thus inducing him to separate from the plaintiff. The nature of this testimony is shown by an extract from the deposition of one Goforth: "Well, Jim asked his pa for some money; Mr. Eagon said, 'What do you want with it, Jim?'

Eagon v. Eagon.

'Why,' he says, 'I want to go to housekeeping.'  Mr. Eagon says, 'You shan't have a cent of my money as long as you live with that woman.'"  The defendant below offered to show, by his own testimony and that of another witness, that, in conversations with his son during the time when he was charged with making such inducements, he used language toward him of directly opposite import from that testified to by the plaintiff's witnesses; that he told the son to bring his wife to his house, and, on another occasion, that he ought to live with her, etc.  Such proof was excluded by the court on the ground that defendant's statements to his son were self-serving declarations, made in his own interest, and that they were hearsay and no part of the *res gestæ*.

It is not contended that such conversations with his son favorable to himself, which the defendant below sought to bring before the jury, were parts of conversations testified to by the witnesses for the plaintiff below, or tending to explain what he said to her witnesses, but were statements made by him to his son at other times, possibly days or weeks prior or subsequent to the declarations of defendant heard by the witnesses of plaintiff below.  The testimony offered did not tend to explain or illustrate the main fact, which was what defendant below said against the marital interests of his daughter-in-law.  Contradictory words would fall outside of the *res gestæ*, and hence were incompetent as evidence.  The main fact being the hostile attitude of the defendant below, his declarations showing expressions of friendship were not calculated to explain or to characterize such acts and conduct as were shown by the evidence introduced by plaintiff.  Greenleaf, in his work on Evidence, in defining *res gestæ*, says: "The principal points of at-

Eagon v. Eagon.

tention are whether the circumstances and declarations offered in proof were contemporaneous with the main fact under consideration, and whether they were so connected with it as to illustrate its character.'' (Vol. 1, § 108.) *Res gestæ* are matters incidental to a main fact, and explanatory of it, including acts and words which are so closely connected with a main fact as really to constitute a part of it, and without a knowledge of which the main fact might not be properly understoood. Where the *res gesta* is a declaration of a particular kind, another declaration made at another time, in no way related to it, and of directly opposing character, is not explanatory; it is contradictory.

The main fact under consideration here being whether the defendant below had, by hostile acts or words, alienated the affections of his son from his son's wife, statements made at other times than those testified to by the plaintiff's witnesses would not be contemporaneous with the main fact, and for that reason were objectionable. Nor is such testimony admissible for the purpose of showing the state of mind of the defendant below toward the plaintiff in the action. The defendant's state of mind was not the question to be litigated, and the court below would embark upon an unprofitable voyage of psychological discovery, resulting in no return of practical value, in permitting the defendant to show, by relating conversations with his son, the state of his mind as affecting his conduct in the case stated.

A question of practice is involved in the refusal of the trial court to permit counsel for the defendant below to make the offer of proof above mentioned. He was required to ask the witness questions calling forth the testimony he desired to get before the jury.

Eagon v. Eagon.

This requirement has left the record of the testimony sought to be elicited in an unsatisfactory condition. It is difficult in most cases to present to the court explicitly in the form of questions the exact proof offered. Where the questions do not clearly show the nature of the testimony an offer of proof ought to be received. In fact, the precise question involved can thus be more clearly presented to the trial court and preserved in the record for review. We approve the practice of making the tender. (*The State v. Barker*, 43 Kan. 262, 23 Pac. 575.) In Elliot, App. Proc., § 743, it is said:

"In the examination-in-chief the exclusion of testimony is not available as error unless the party makes an offer to prove the facts which he assumes that his question will elicit. Where an objection is properly interposed more must be done, in cases where the objection is sustained, than to ask the question; the party producing the witness and insisting upon the question must state what he proposes to prove by the witness. This is necessary in order to enable the court to determine whether the testimony is competent and material. The record must show the offer, and show also the presence of the witness. The court will not rule upon mere abstract questions, and hence it must appear that there was an actual offer and a present ability to adduce the proffered testimony. The facts proposed to be proved must be specifically stated. . . . In short, there should be satisfactory indications of willingness, readiness, good faith, and present ability."

We think the court should have permitted counsel for the defendant below to make an offer to prove those facts which were so imperfectly developed by the several questions asked of the witnesses.

The plaintiff below was permitted to testify concerning the actions and manner of her husband at a time when he and his father were in a freight-car at

Overbrook. This was to the effect that the former came to the car door and took a position indicating that he was about to step out, that he looked at his father, turned around, and went back into the car. It is claimed that this was incompetent, as constituting a communication between husband and wife. We do not think so. The communication, if any was shown, was between father and son. It is contended that the wife is not disqualified from giving testimony of communications had with her by her husband in the presence and hearing of third persons; that it is the privacy of the confidential relation between husband and wife that the law seeks to protect. This contention is unsound. The statute disqualifies both husband and wife. The disqualification goes to the witness, not the subject-matter of the testimony. However public the communication may be, and however numerous the hearers, husband and wife cannot be heard in court concerning it. (*The State v. Buffington*, 20 Kan. 599.)

Complaint is made that the trial court permitted the plaintiff below to testify that she entertained a strong affection for her husband. This was no more than the fortifying of a presumption. The proof was unnecessary, but its admission was not error. In *Bailey v. Bailey*, 94 Iowa, 598, 63 N. W. 341 it is said : " The state of her mind and the ardor of her love are not material except upon the question of damages. The law indulges a presumption, no doubt, that the husband had affection for his wife, and it rests with the defense to prove that he did not have."

The sixth instruction to the jury by the court was erroneous. It reads :

" I instruct you, gentlemen of the jury, that a parent is not liable in damages to his son's wife for ad-

vising the son to separate from his wife, if such advice be prompted by the proper parental motives for his son's welfare and happiness, instead of malice; but you are further instructed that such advice will be malicious toward the son's wife, and no protection to the parent, unless the wife was guilty of acts which could be charged as grounds of divorce against her.''

This instruction took from the consideration of the jury the question of malice unless the wife was guilty of acts which could be charged as grounds of divorce against her.   This rule is too harsh.   Suppose a case where a father, by his advice and counsel, induced his married daughter to leave a worthless husband and return to the parental roof.   It might be that the husband had wilfully deserted his wife for eleven months, yet, under the law laid down by the trial court, the action of the father would be malicious and recovery of damages could be had against him by the husband; for to constitute a ground of divorce the abandonment must have continued for one year. Again, '' the conviction of a felony and imprisonment in the penitentiary therefor subsequent to the marriage '' is ground for a divorce.  Under the law of said instruction, inducements held out by the father, causing his daughter to desert a husband convicted of a felony, but before imprisonment in the penitentiary therefor, would be malicious and actionable.   The husband might be guilty of such neglect of his marital duties as not to amount in law to gross neglect, which is one of the grounds for divorce, yet there might be many cases of such dereliction which would justify a parent in advising his daughter to submit no longer to indignities falling short of furnishing grounds for divorce.   In actions of this kind the question must be whether the father was moved by malice or by proper parental motives for the welfare and happiness of his

child. He may have erred in his advice as to the best course to be taken in dealing with so difficult a question, but he is entitled in every case to have a jury pass upon the integrity of his intentions and determine the existence of bad motives. In *Tucker v. Tucker*, 74 Miss. 93, 32 L. R. A. 623, 19 South 955, it is said:

"In every suit of this character, the principal inquiry is, From what motive did the father act? Was it malicious, or was it inspired by a proper parental regard for the welfare and happiness of his child? The instinct and conscience unite to impose upon every parent the duty of watching over, caring for and counseling and advising the child at every period of life, upon marriage and after marriage, whenever the necessities of the child's situation require or justify such action on the parent's part. The reciprocal obligations of parent and child last through life, and the duty of discharging these divinely implanted obligations is not and cannot be destroyed by the child's marriage. Multiplied instances will occur to the mind in which a failure of a father to speak and to act would be regarded with horror. A daughter who has recklessly contracted an undesirable marriage with a man utterly unworthy to be the husband of a virtuous woman, against the wish and over the vigorous protest of the father, and who has, by such ill-starred union, been brought to wretchedness and humiliation and want of the ordinary comforts of life, may surely be advised, counseled and cared for in the parental home, even against the will and expressed wish of the unfaithful husband."

By the instruction given, there being no grounds of divorce shown to exist in favor of the husband against the wife, the jury were told that the action of the father in advising the son to leave her was malicious, and no discretion as to the existence of malice was left to the jury after they had found that the defend-

Eagon v. Eagon.

ant below had used language toward his son tending to induce him to leave the defendant in error. Malice cannot be inferred from the fact that no ground for divorce existed. The father stands in a very different relation toward his married son or daughter than a stranger would occupy toward the same persons. Natural affection would imply that the advice and counsel extended to them were prompted by good motives, and unworthy objects cannot be presumed. They ought positively to be shown or necessarily deduced from the facts and circumstances detailed. (*Gernerd v. Gernerd*, 185 Pa. St. 233, 39 Atl. 84.) In *Reed v. Reed*, 6 Ind. App. 317, 33 N. E. 638, it is said :

"When trouble and disagreements arise between the married pair, the most natural promptings of the child direct it to find solace and advice under the parental roof. All legitimate presumptions in such cases must be that the parent will act only for the best interests of the child. The law recognizes the right of the parent in such cases to advise the son or daughter ; and when such advice is given in good faith, and results in a separation; the act does not give the injured party a right of action. In such a case the motives of the parent are presumed good until the contrary is made to appear. These rules have generally been applied in cases where the suit was brought by the husband for the alienation of his wife ; and we see no reason why they should not, with proper modification, prevail where the wife is the plaintiff."

The instruction above set out was clearly erroneous, and for that reason the judgment of the court below is reversed, and a new trial ordered.

DOSTER, C. J., and JOHNSTON, J., concurring.

SMITH, J. (dissenting) : I do not agree with the majority of the court in the view taken regarding the rejection of the evidence tending to show statements

45—60 KAN.

of the defendant below to his son advising him to live with the plaintiff, etc.   Such statements were, in my judgment, part of the *res gestæ*.   The petition alleges "that said defendant, from the time of the marriage of plaintiff with the said James S. Eagon until the 10th day of October, 1895, constantly, persistently and determinedly solicited, importuned, coaxed, re-quested and commanded his son, the husband of the plaintiff, to leave and separate from plaintiff."   To say that the *res gestæ* were what the defendant below urged against the marital interests of the woman is too narrow.   The main fact in controversy in the case, the thing to be determined, was whether the father did or did not by his words and conduct alienate the affections of his son from the wife.   The *res gestæ*, then, covered transactions within the period from the date of marriage, December 17, 1894, until the final alienation on October 10 following, during which time the father is charged with "constantly and persistently" soliciting and importuning the son to leave his wife.

In *In the matter of Taylor*, 9 Paige, 611, it is held that where the question is as to whether the intercourse between a man and woman living together as husband and wife is matrimonial or meretricious, the *res gestæ* cover the entire period of their living together, and include the declarations as well as the acts of the parties tending to characterize their intercourse.   Where a contract is perfected after repeated interviews, all representations made at the previous interviews are included in the *res gestæ*.   (*Ahern v. Goodspeed*, 72 N. Y. 108.)   Wharton defines *res gestæ* as follows :

"The *res gestæ* may be therefore defined as those circumstances which are the undesigned incidents of a particular litigated act, and which are admissible

when illustrative of such act.   These incidents may be separated from the act by a lapse of time more or less appreciable.   They may consist of speeches of any one concerned, whether participant or bystander ; they may comprise things left undone as well as things done.   Their sole distinguishing feature is that they should be the necessary incidents of the litigated act.'' (1 Whart. Ev., § 259.)

The litigated act here was whether or not there was an alienation induced by a series of persuasive words used by the defendant.   So long as anything in the usual course of business remains to be done to complete a transaction, for example, the giving of a receipt, whatever is said until the transaction is thus ended assists to constitute the *res gestæ*.   (*Fifield v. Richardson et al.*, 34 Vt. 410.)   In a note to Taylor on Evidence, vol. 2, p. 391, it is said :

" Legal liability in any case is predicated upon the existence of some particular transaction or state of affairs.   It is this group of facts or events which make up its *res gestæ*.   Obviously the degree of remoteness which excludes a relevant fact from being considered part of the *res gestæ* will be largely a matter of judicial discretion, and one in which considerable diversity of opinion may be fairly expected."

What the defendant below said to the son during the period that he was alleged to be working on the latter's affection for his wife in derogation of the latter's marital rights is said to be admissible as part of the *res gestæ*, but what he said to the contrary during the same period is held not to be so.   Whether an act is within the *res gestæ* ought not to be determined by the fact whether it has a favorable effect on the rights of the plaintiff or the defendant in the suit.   Here the transaction began in December, 1894, and ended October 10, following.   The acts, demeanor and state-

ments, within the time when the defendant below was engaged in the transaction of alienating his son's affections, were a part of that transaction, and I can find no reason or authority for admitting statements made during that time which were favorable to the plaintiff below and excluding those that might be injurious to her. If within the *res gestæ* all were admissible.

*Maher v. The People*, 10 Mich. 212, was a criminal case in which the court said:

"The circumstances which in fact led to the assault were part of the *res gestæ*, which the jury were entitled to have before them, to show what was the real nature of the act — the *quo animo*, state of mind and intention with which it was done. The object of the trial should be to show the real nature of the whole transaction, whether its tendency may be to establish guilt or innocence. . . . But, until the whole is shown which might have any bearing ·one way or the other, its tendency to establish the one or the other cannot be known."

In Rice on Evidence, vol. 3, p. 123, it is said:

"It may therefore be laid down as the established doctrine that, as to all facts in evidence properly constituting part of the *res gestæ*, they are to be considered by the jury, in passing upon the question of guilt or innocence, whether introduced by the prosecutor or the defendant."

In *Little v. Commonwealth*, 25 Gratt. 921, the prisoner was indicted for murder. He endeavored to prove his statements at the time of the murder while he had a gun in his hand. They were excluded by the trial court as not part of the *res gestæ*. It was said:

"We think that the court erred in refusing to permit the witness to state what was said by the prisoner on the occasion referred to. What was so said might well have been, in whole or in part, admissible evi-

dence either for or against the prisoner.   It was very
closely connected, both in time and place, with the
homicide, which was the subject of the prosecution,
and might well have tended to elucidate that fact as
part of the *res gestæ*.''

The case of *Felt v. Amidon and others*, 43 Wis. 467,
was an action brought to recover damages for the al-
leged enticing by the defendant of the unmarried
minor daughter of the plaintiff from his residence in
Iowa.   The girl was enticed to Milwaukee, Wis., and
there left.   It was held that the declarations and
statements of the girl, from the time she started from
home until she was left in Milwaukee, were part of
the *res gestæ*, and admissible in evidence.   The court
said that the transaction upon which the action was
founded was the enticing of the plaintiff's daughter
from her home by the defendant; that that was the
*res gesta*, and all that was said and done by the actors
in that transaction contemporaneously with and which
tended to illustrate its character were parts thereof,
and might be proved on the trial by either party ; that
then the defendant charged with the abduction might
show that he made statements to various persons, dur-
ing the progress of the abduction and before its con-
summation, to the effect that the inducements held out
to the girl were honorable in their character.   By the
same rule the declarations of the girl relative to her
leaving home, and the circumstances under which she
went to Milwaukee, were held to be competent.   It
will be seen from this case that what is denominated
as the *res gestæ* extended over a considerable period of
time, and must have included the various inducements
and promises made to the plaintiff's daughter at her
home and during the journey to Milwaukee, and all
being within the *termini* of the transaction were com-

petent as evidence for or against the defendant in the suit.

In the early case of the trial of Lord George Gordon for treason, cited in the books, the cries of the mob were admitted in evidence as part of the *res gestæ*, tending to show the purpose and object of the gathering and its treasonable character. Cries of "Down with it," "No popery," were shown to have been uttered. If at the same time there were other cries from other or the same persons composing the mob of "God save the pope," could it be said that they were inadmissible?

The testimony of said declarations of the defendant offered in the case at bar were not open to the objection of not being contemporaneous with the main fact to which they related. The principal fact was whether the defendant had, by a series of persistent inducements extending over a period of ten months, alienated the affections of his son from his son's wife. If a person assaulted in an affray should receive two or more stabs, what he said at the time of receiving the last one concerning the first would be the narrative of a past transaction, but nevertheless admissible as part of the *res gestæ*. The true inquiry is whether the declaration is a verbal act, illustrating, explaining or interpreting other parts of the transaction of which it is itself a part, or merely a history, or part of a history, of a completed affair. The leaving and staying away from his wife by the son constituted the transaction upon which the action is founded. That is the *res gesta*, and the declarations of the father, he being one of the actors in that transaction, were competent to be shown.

The case of *Bailey v. Bailey*, 94 Iowa, 598, 63 N. W. 341, is similar in all respects as to facts to the case at

Eagon v. Eagon.

bar. The defendant, after the plaintiff had offered evidence tending to show that he had made statements to the son which tended to alienate his affections from the plaintiff, offered to prove that he had offered plaintiff's husband eighty acres of land provided he would go and live on it; offered to give him a team and furnish him implements with which to sow and plant land, upon which the plaintiff and the son might live, and offered to build a house upon the land provided the plaintiff's husband would go there and live with her. This testimony was excluded at the trial as constituting a self-serving declaration. The court, in reversing the judgment, said :

" The purpose of the testimony was to show that defendant had, as a matter of fact, tried to induce his son to do the very thing plaintiff was insisting upon, and to show the condition of her husband's mind and the state of his affections towards her. Such testimony would have the tendency to negative the idea that defendant was trying to induce his son to abandon the plaintiff. It was substantive testimony of verbal acts tending to show that he was trying to induce his son to live with plaintiff, and that the son's refusal to do so was not brought about by his conduct."

Whether the declarations of the defendant were made *bona fide* or were a mere ruse to manufacture evidence in his own behalf was for the jury to judge. (*Danforth v. Streeter*, 28 Vt. 490.)