LAURETTA A. ACKER V. C. V. NORMAN, *as*
*Receiver, etc.*

No. 14,423.    (84 Pac. 531.)

SYLLABUS BY THE COURT.

EVIDENCE—*Demurrer*—*Conflict of Testimony*—*Question for the Jury.* It is error for a trial court to sustain a demurrer to the evidence because there is a conflict between plaintiff's testimony in chief and that given upon cross-examination. The court cannot weigh the evidence. If these is any evidence whatever to support plaintiff's case it must be left to the jury to decide its weight and credibility.

Error from Doniphan district court; WILLIAM I. STUART, judge. Opinion filed January 6, 1906. Reversed.

*John F. Kerrigan,* for plaintiff in error.

*S. M. Brewster,* for defendant in error.

The opinion of the court was delivered by

PORTER, J.: Plaintiff in error brought this action in replevin to obtain possession of certain hogs and cattle levied upon by the sheriff of Doniphan county upon process issued against her husband. The receiver of the Bank of Highland was substituted as defendant. Upon the trial, at the close of plaintiff's testimony, the court sustained a demurrer to the evidence, and plaintiff brings error.

The plaintiff with her husband occupied a farm belonging to the husband's father. She testified that she purchased with her own money the brood-sows and boar for breeding purposes, and that the young pigs were the increase from these; that she purchased and paid with her own money for the cows which with their calves were levied upon; that she purchased with her own money the feed that was fed to this stock—some of it from her husband and some from others; that her resources consisted of interest paid to her upon a note for $2000 which came to her from her

father's estate, and money obtained from boarding the school-teacher, amounting to seventy dollars at one time, and eighty dollars at another; that she borrowed some of the money from the bank; that she and her daughter delivered milk to a creamery during one season, ·and with the money earned bought a buggy; and that she traded her half-interest in this buggy for a colt, and traded the colt for one of the cows. She testified with reference to each head of stock claimed by her, and was familiar with the history and description of each.

In addition she introduced her pass-book, showing a bank-account kept in her name from December, 1899, to some time in 1904, and the checks given in payment of most of the stock in controversy. These checks were signed in her name by her husband, and the deposits she said were made by him in her name from funds belonging to her. She testified that her father-in-law owned the farm and gave the use of it to her; that her husband had no property on the place except one cow; that the work on the farm was done mostly by a hired man; and that her husband acted as her agent in depositing the moneys belonging to her in the bank and in drawing checks upon her bank-account. Her husband was a witness, and testified to his acts as her agent in depositing the money and drawing the checks, and that in each instance, when checks were given for stock purchased, she directed him to make the purchase and to draw the checks. The checks were all signed "L. A. Acker, C. F. A.," the initials "C. F. A." being those of her husband.

Upon cross-examination plaintiff was asked with reference to each of the items shown upon the credit side of the pass-book, beginning with December 18, 1899—whether the items represented money belonging to her, and where she obtained it. She was unable to state as to most of the items where the money came from, or whether in fact it was her own or her husband's money. In reference to one item of $69.20, de-

posited March 6, 1902, she said "that might have been mine," and that she was boarding the school-teacher about that time. Also upon cross-examination she still insisted that she gave her husband thirty-five dollars to pay for corn for feed, and that she borrowed money twice at the bank with which to take up checks given for some of the stock purchased. She was unable to show upon the pass-book the particular credit given her for either note, and was not clear whether the amount borrowed at the bank was exactly the amount of the checks or not. She was asked the following questions by the court:

"Ques. Can you give even one time, and name the time or the amount you deposited, and from where or from whom you got the money? Ans. No, sir; I can't. I can't remember. . . .

"Q. When you borrowed this money in the bank, what did you do with it—place it to your credit? A. I borrowed enough to pay for the cow—to cover the check.

"Q. Did you have it placed to your credit on the bank-book? A. Yes, sir.

"Q. Then drew the check? A. Yes, sir."

Afterward she was asked to point out in the pass-book the item of $52.97 representing this transaction, and answered:

"There is a deposit here of that amount.

"Ques. Is n't that on the other side, where the check is charged up; it is n't there, as a matter of fact, is it, Mrs. Acker? Ans. No; it is not here."

There are many material contradictions in her testimony disclosed by her cross-examination, and it is apparent that the trial court sustained the demurrer on account of these, believing that the admissions and contradictions had destroyed the effect of her evidence in chief. This was error for which the cause must be reversed. Where there is a conflict in the testimony it is the province of the jury to decide it. They are the exclusive judges of the weight and credibility of the evidence. (*K. C. Ft. S. & G. Rld. Co. v. Foster*, 39 Kan.

329, 18 Pac. 285.) In *Neiderlander v. Starr,* 50 Kan. 770, 771, 33 Pac. 592, 593, the court said: "In his cross-examination he seems to have been confused, and his evidence is indefinite and conflicting; but the court should have permitted the jury to pass upon the conflicting evidence." In *Christie v. Barnes,* 33 Kan. 317, 6 Pac. 599, it was said: "A demurrer to evidence admits every fact and conclusion which the evidence most favorable to the other party tends to prove." (*K. P. Rly. Co. v. Brady,* 17 Kan. 380; *K. P. Rly. Co. v. Couse,* 17 Kan. 571; *Wolf v. Washer,* 32 Kan. 533, 4 Pac. 1036; *Merket v. Smith,* 33 Kan. 66, 5 Pac. 394; *Horne v. Salt Co.,* 52 Kan. 617, 35 Pac. 200; *Buoy v. Milling Co.,* 68 Kan. 436, 75 Pac. 466; *Hoffmeier v. Railroad Co.,* 68 Kan. 831, 75 Pac. 1117.)

It must be observed that nowhere in her cross-examination did the plaintiff withdraw her statement that the cows and hogs had been purchased by her with her money. True, she admitted that she could not remember where any particular item of deposits in her bank-account came from, but when her cross-examination closed she was still contending that it was her money that purchased all the stock. Doubtless there are instances where a demurrer should be sustained because, upon cross-examination, a party testified in direct contradiction to his testimony in chief upon some vital fact, essential to his recovery, where the latter controls the former statement and practically admits that the former was a mistake or untrue. If a demand be necessary to be shown to entitle the plaintiff to recover, and upon examination in chief he should state that he had made the demand, but upon cross-examination should correct his former testimony and state that he had not made the demand, or had made it upon the wrong person, and if no other evidence were given upon that essential point, a demurrer would lie. This would require no weighing of the testimony; the later statement would control, and plaintiff would not be left in the position of contending that he had proved

a demand. If in an action for damages at a railway-crossing it were necessary for plaintiff to show that he looked and listened for a train, and upon his examination in chief he should say that he had looked and listened, but on cross-examination should state that he was mistaken, and in fact had not looked or listened, and this should be all the evidence upon that point, there would be nothing to weigh. The fact would be the same as admitted or conceded, and, under the supposed case, a demurrer would lie because contributory negligence was shown.

Where the cross-examination merely tends to show that the testimony in chief was false, and to say that it was false requires a weighing of it, and plaintiff is still left in the position of contending that the first statements are true, there arises a conflict of testimony which the jury alone may determine. That is this case. Many of the answers of plaintiff upon her cross-examination tended to show that this bank-account was made up of funds belonging in part at least to her husband, and left grounds from which the jury might have found that little, if any, was ever hers, and from which they might have disbelieved her testimony entirely as to the facts about the purchase and ownership of the stock; but it was necessary before the jury could do this for them to weigh carefully a large mass of testimony, made up of conflicting statements of plaintiff, the checks, the pass-book, the husband's testimony, and all the facts and circumstances in evidence. Among other things they might have taken into consideration that the woman was examined in reference to the separate items in her pass-book upon an account covering a period of five years, made up of over 60 items of deposits and about 200 debit items of checks drawn against the account, and, with their experience in keeping track of items in pass-books of their own, may have attached less importance to her failure to remember what these items represented than did the trial court.

Albright v. Insurance Co.

The other errors complained of in sustaining objections to certain questions asked of plaintiff and her husband have been examined, but we find nothing substantial in any of them.

For the error in sustaining the demurrer the judgment is reversed and the cause remanded for another trial.

All the Justices concurring.