No. 19,995.

GEORGIA N. ERICKSON, Appellant, v. JOHN ERICKSON and JOSEPHINE ERICKSON, Appellees.

SYLLABUS BY THE COURT.

1. ALIENATION OF AFFECTIONS—Evidence Rejected—Self-serving Declarations. Plaintiff testified to statements made by defendants in conversations had with her but the court refused to permit her to state what she said to them. The statements excluded were self-serving in character and did not tend to explain the language of the defendants. Held, not error.

2. ALIENATION OF AFFECTIONS—Evidence—Letter Written by Plaintiff—Incompetent. In an action in which plaintiff sued to recover damages from the parents of her deceased husband for alienating his affections, a letter written plaintiff by her husband prior to their marriage was offered as evidence of his affection for plaintiff. Held, incompetent as against the defendants.

3. SAME—Demurrer to Evidence—Properly Sustained. In view of certain admissions of the plaintiff it is held that notwithstanding there was what may be called a scintilla of evidence to support her claim the ruling sustaining a demurrer to the evidence will not be disturbed.

Appeal from Butler district court; ALLISON T. AYRES, judge. Opinion filed June 10, 1916. Affirmed.

George J. Benson, T. A. Kramer, both of El Dorado, and Walter H. Maloney, of Kansas City, Mo., for the appellant.

W. P. Hackney, of Winfield, G. P. Aikman, C. L. Aikman, both of El Dorado, and J. T. Lafferty, of Kansas City, Mo., for the appellees.

The opinion of the court was delivered by

PORTER, J.: The action in the district court was one in which the plaintiff sued to recover damages from the parents of her deceased husband for alienation of his affections. It was not

brought until after his death. This is an appeal from a ruling of the trial court sustaining a demurrer to the plaintiff's evidence.

The defendants live on a ranch near Latham, Butler county. Their son, John G. Erickson, met the plaintiff in Kansas City, and after a brief courtship they were married on the 16th day of November, 1911. The petition alleged that shortly after the marriage the defendants, maliciously intending to deprive the plaintiff of the affections, support and maintenance of her husband, tried to induce the plaintiff to leave and abandon their son and separate from him, and that upon her refusal to do so they maliciously and persistently advised, influenced and entreated him to fail to support and maintain her and to abandon and leave her; and finally, on the 27th day of December, 1911, succeeded in their designs and persuaded him to abandon her, and shortly afterwards to commence an action against her for divorce and to make false and humiliating accusations against her; that on the 28th day of March, 1913, during the pendency of the divorce suit, John G. Erickson died.

The court permitted the plaintiff to testify to statements made to her by defendants, but refused to permit her to tell all she said to them in the same conversations. The statements excluded were for the most part incompetent because of their self-serving nature, and besides they did not tend to throw additional light upon the language used by the defendants. A letter written to the plaintiff by her husband before the marriage was offered to show his affection for her. It was not competent evidence against the defendants. The presumption is that he had affection for her or he would not have married her.

The principal claim made in the appeal is that the case is one which should have gone to the jury, and that it was error to sustain the demurrer to the evidence. There was very little testimony tending to show that the defendants were in any respect responsible for the separation of the plaintiff and her husband. She admitted that the statements in her verified answer to the petition for divorce were substantially true. In that answer she alleged that her husband had never at any time provided a home for her or made any attempt to do so; that she was compelled to live at the home of his parents,

which was contrary to her wishes; that on the day of her marriage her husband became intoxicated and remained in that condition for a week, after which he left her in Kansas City and went to his parents' home and made no effort to have her join him.    In her sworn answer she also stated that her husband was an habitual drunkard; that while she lived with him she contracted from him a loathsome disease, and that he refused to lend her assistance to recover her health; that prior to the marriage he represented to her that he was wealthy and that he owned an interest in his father's ranch and cattle and had a large bank account; that these statements were untrue; that she learned when she went to Latham she would be required to do the housework and look after the home of her husband's parents, and that she was physically unable to do this; that she left the ranch and went to Kansas City with her husband's consent and under his instructions, and that he refused and failed to furnish her money to return to Latham; that he failed to write her and neglected to answer her letters; that he never contributed at any time to her support; that during the short time she remained with him at Latham he repeatedly stated that he did not want to live longer with her, and urged her to leave him; that on the 2d day of January, 1912, her husband called to see her at the home of her parents in Kansas City, that he was in a drunken stupor and was abusive and ill-tempered, and that he offered her and her parents numerous indignities.

Her testimony is that she had never seen either of the defendants until the day after her marriage, when her husband took her to Excelsior Springs, near Kansas City, and introduced her to his mother.    A few days later he left her and went to Latham.    During the next two weeks she had several conversations with Mrs. Erickson, who told her she had made a mistake in marrying John, that she could never get along with him, that he had no way of making a living for her, that he drank and was not fit to live with, that he was "burnt up" with disease, that he was still in love with his first wife, and always had been, that if she would not go to Latham and live with him, she, Mrs. Erickson, would set her up in the millinery business or send her to school; that afterwards Mrs. Erickson paid the expense of taking her to Latham.    She testified that

Erickson. v. Erickson.

after she had been at the ranch a short time Mrs. Erickson advised her to go to Kansas City and visit her family, and said John could not go. She remained at the ranch for only two weeks and then went back to her parents and never afterward lived with her husband. There was no evidence of any conduct of Mr. Erickson that tended to support plaintiff's claim, except that he had very little to say to her during her stay at the ranch and refused to allow his son to accompany her to Kansas City. There was evidence tending to support the averments in the petition to the effect that the parents sought to persuade plaintiff not to live with her husband, at least that the mother had done so; but there was no substantial testimony to show that defendants alienated the affections of their son for his wife, or that they induced him to bring proceedings for divorce.

Of course, under the rule so often declared (see *Acker v. Norman*, 72 Kan. 586, 84 Pac. 531; *Bowes v. Sly*, 96 Kan. 388, 152 Pac. 17; *Hyland v. Railway Co.*, 96 Kan. 432, 151 Pac. 1107), the mere fact that there were contradictions in plaintiff's testimony would not authorize the court to take the case from the jury. But the plaintiff admitted that her sworn statements in the divorce proceeding were true. If they were true, it is difficult to see how she could have had a cause of action against the defendants. All the statements about her son which the mother made to the plaintiff appear to have been the truth. To her sorrow plaintiff herself learned of their truth, very soon after her marriage. While there was what may be called a scintilla of evidence tending to support the plaintiff's contentions, we think the trial court was doubtless convinced, as we are, that this is a case which should never have been brought. If upon plaintiff's own testimony the jury had returned a verdict in her favor it would have been the duty of the trial court to set it aside. In view of all the conceded facts, we think this is not a case which calls for an application of the rule that if there is any evidence tending to support the plaintiff's claim the case must be submitted to the jury.

For these reasons the judgment will be affirmed.

DAWSON, J. (dissenting) : So far as the facts can be gleaned from the printed page, I have little sympathy with plaintiff's claim. She may have been a mere adventuress, entitled to no

consideration; but I do not think the judge of a district court any more than the bailiff or the bystanders should usurp the province of the jury. There is at least a bare possibility that the plaintiff was an innocent and much-injured woman, and that the defendants did meddle with her domestic felicity, and that they largely prevented it. In any event, and tested by oft-repeated decisions of this court, the plaintiff's evidence was sufficient to call for the regular and legitimate exercise of the jury's functions. I therefore dissent.

WEST, J., dissents.