No. 25,774.

ELIZABETH C. MEEK, *Appellee,* v. MINNIE MEEK, *Appellant.*

### SYLLABUS BY THE COURT.

HUSBAND AND WIFE — *Alienation of Affections — Evidence.* The evidence is held insufficient to support a verdict for the plaintiff in an action for alienation of affections, on these grounds: Where a young husband and wife were living with his parents, the fact that his treatment of her which had theretofore been affectionate, suddenly changed for the worse and became unkind, finally culminating in his ordering her to leave, and at the time of this change frequent whispered conferences between him and his mother began, which broke off upon her approach, there being, however, no evidence of what was said between them, does not warrant a valid inference that his mother was undertaking by improper means to alienate his affections from his wife. Nor is the situation materially changed by evidence that after the husband had ordered his wife to leave, her trunk was packed by his mother, and that the mother had frequently said a girl ought not to have children unless she had a home of her own.

Appeal from Ellsworth district court; DALLAS GROVER, judge. Opinion filed March 7, 1925. Reversed.

*Ira E. Lloyd,* and *N. F. Nourse,* both of Ellsworth, for the appellant.
*Samuel E. Bartlett,* of Ellsworth, for the appellee.

The opinion of the court was delivered by

MASON, J.: Elizabeth C. Meek brought this action against M. L. Meek and Minnie Meek, the father and mother of her husband, for damages for having alienated the affections of her husband, Lewis Meek. M. L. Meek's demurrer to the evidence was sustained, but judgment for $2,500 was rendered against Minnie Meek, who appeals, and who will be referred to as the defendant.

The plaintiff and her husband were married in Denver, March 9, 1921, he being twenty-three years of age, she nineteen. They lived there about six weeks, and early in May came to Ellsworth and lived with his parents. About the last of August the defendant left for a visit in California, the plaintiff accompanying her as far as the home of her parents in Colorado, where she stayed until about the last of September, when she returned to Ellsworth. The defendant

Meek v. Meek.

returned about four weeks later. On January 18, 1922, the plaintiff and her husband separated, she going to the home of her parents.

The defendant's principal contention is that there was no evidence to support a finding that she alienated her son's affections from his wife. If there was such evidence it must be found in testimony of the plaintiff to this effect:

The plaintiff and her husband got along "just fine" all the time they were in Denver. She cared for him and he seemed to care for her. This condition continued until the defendant's return from California. After that the plaintiff's husband and the defendant were always whispering together when the plaintiff was around. The plaintiff testified: "I saw Lewis and his mother often together. They were always whispering about me. . . . I didn't hear any conversation. They would always cease when I would come in." "Whenever they had a chance in the morning before he went to work he would be in the kitchen talking." When they (Lewis and his mother) would be out in the kitchen whispering the plaintiff would come in and they did not continue talking or whispering, nor did they say anything to her about what they had been saying. When the defendant would go down town and come home in the car she and Lewis would stay outdoors a long time and talk, which they never had done before. Neither would say anything to the plaintiff. From this time on the attitude of Lewis toward the plaintiff changed entirely. He did not take her out any place; he would leave every night and go by himself, without telling her where he was going. "He just changed altogether." He did not treat her the same as he had before. He didn't have anything to do with her at all; he was very cool, wouldn't talk to her or anything; he showed no affection toward her.

This condition continued as long as she remained with him. The plaintiff had given him no cause for this change of treatment, but at all times entertained affection for her husband and showed it. For about a month before the plaintiff left, her husband used to go to his room from the supper table and leave every night and come in late, and would not be in her room as much as in times past. The night before the plaintiff left she asked her husband where he had been when he came in late, and he answered that it was none of her business. He decided that she "could [should] go home." She had no difficulty or quarrel with him. She did not leave him. The next morning the plaintiff's husband went down and got her

trunk out of the storeroom and his mother packed it. The plaintiff had said nothing to her about packing the trunk or getting it out. The defendant put everything in the trunk but the plaintiff's table silver, a wedding present from her husband, and when the plaintiff put that in the defendant took it out and put it in the plaintiff's workbasket, telling her it was too heavy and she had better not take it. The plaintiff also had some cut glass and things which were not put in the trunk.

The defendant said nothing in regard to what she was doing to the plaintiff. The plaintiff did not see her husband until he came home at noon. He said nothing. In the afternoon he came home with the tickets and said nothing except to tell her she could go that night. She did not see him again until he took her in the car to the train, at 6 o'clock in the evening. At the train he told her there had been a terrible mistake made and he was coming to Denver to meet her as soon as things quieted down a little bit. In the afternoon he had told her to go home and get a divorce if she could —that if he got it he would have to lie. While the plaintiff and her husband were living with his parents the defendant often said to the plaintiff that she didn't think a girl ought to have any children unless she had a home of her own—"she always used to say that."

Prior to August, 1921, the plaintiff became pregnant. Her husband told her he didn't want any children around the house, and his mother didn't. He took her to a doctor in another town, who performed an operation resulting in a miscarriage. The plaintiff did not know whether or not the defendant knew about this. On January 28, 1922, the plaintiff's husband wrote her from Ellsworth: "I do not know where I shall go or what I shall do. Have been staying here until I can get some of my bills paid off. I think you understood things when we talked it over and I don't think we can ever get along, as it will be the same thing over again. Think you will be better off and much better satisfied if you stay there; so use your own judgment. We could never come back here—you know that— and as for going to Denver, there is nothing doing." On February 14, 1922, he wrote her that he could not tell her anything definite as to what he was going to do, but would let her know that week or the next. Within a week he brought action for a divorce.

In an action for alienation of affections brought against a parent of the plaintiff's spouse, proof of a higher degree, if not of a different kind, is required than in the case of a stranger. (30 C. J. 1129-30,

1145; *Cooper v. Cooper,* 102 Kan. 378, 171 Pac. 5; *Erickson v. Erickson,* 98 Kan. 244, 158 Pac. 48; *Eagon v. Eagon,* 60 Kan. 697, 57 Pac. 942.) Here, in the judgment of this court, there is an entire lack of what the law regards as evidence to support a finding of malice, improper motive, or actual interference in the relations between the plaintiff and her husband. True, the fact that the change in the attitude of the plaintiff's husband toward her began at the same time as the whispered conferences between him and his mother naturally gives rise to a suspicion that the relation of cause and effect existed; but without some knowledge of what was said, no valid inference can be drawn as to what it was or whether it was of a character to expose the defendant to legal liability. The gap in the plaintiff's case cannot be supplied by the circumstance that after her departure had been determined upon the defendant packed her trunk. The remarks about the inadvisability of the plaintiff having children before she had a home for them is not fairly to be construed as intended to induce her husband to withdraw his affections or desert her.

The judgment is reversed with directions to render judgment for the defendant.

JOHNSTON, C. J., and BURCH, J., dissenting.