No. 28,203.

HENRY C. KRENKLE, *Appellant*, v. ARTHUR SELLECK et al., *Appellees*.

(268 Pac. 807.)

Opinion filed July 7, 1928.

*C. L. Kagey, L. M. Kagey, R. H. Noah* and *R. L. Hamilton,* all of Beloit, for the appellant.

*R. M. Pickler,* of Topeka, *F. A. Lutz* and *A. E. Jordan,* both of Beloit, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: Henry C. Krenkle brought this action against Arthur Selleck and his wife, Julia Selleck, to recover damages for alienating the affections of his former wife, Eva Krenkle. At the trial plaintiff offered his evidence, and when he had rested the court sustained a demurrer to his evidence and gave judgment for defendants. He appeals from the ruling and judgment.

Did the evidence produced by plaintiff tend to establish a right of action against the defendants for the alienation of the affections of his former wife? is the only question presented on this appeal. It appears that the plaintiff and Eva Mears were married October 9, 1923. Each had been married before, and each had children by the former marriage. He had three children who were living apart from him, while Mrs. Krenkle had two children by a former marriage, namely, Paul Mears, aged sixteen years, and Ruth Mears, aged fourteen. He owned a tract of land which was incumbered, and she was living on an improved farm of 240 acres that had descended to her, one-half of which was owned by her and the remaining one-half by her children, Paul and Ruth. Before her marriage he presented to her a prenuptial agreement which contained

among other things stipulations to the effect that they should occupy and operate her farm and would divide the products upon a certain basis. It was stipulated in the agreement that each should waive the right of inheritance in the property of the other, and that the property of each should ultimately pass to his or her own children. She was not satisfied with the agreement because it did not contain provisions relating to her son, Paul, who wished to gain a college education. He told her he would write such a provision in the agreement, if she would word it, but it was signed without alteration.

The evidence tended to show that shortly after the marriage she complained that the contract was unfair as to Paul and wanted to know where the money was coming from to send him to college, and he testified that she kept on nagging him day after day for money to educate Paul. During the months following the marriage there were disagreements, and she ultimately applied for a divorce. At one time in September, 1925, she telephoned to her parents, the defendants in the case, to come to her home; and they went there and found plaintiff and his wife discussing their differences in a heated manner, and after listening to their discussion for about two hours, Mr. Selleck made the remark, "If you cannot get along any better than this, the only thing you can do is to be divorced." There was some talk of their entering into a new agreement, and the defendant, Arthur Selleck, remarked that another agreement would not do any good; if you cannot live together with the agreement you have, you had better be divorced. No other representations were made by defendants or any interference by them shown. Afterwards plaintiff and his wife with the defendants went to the office of the probate judge, with a view, it seems, of obtaining a divorce, and were told by the judge that he had no authority to grant one. They then called on a lawyer and discussed their troubles with him, and the defendants left and went to their own home. Shortly afterwards a divorce was granted to Mrs. Krenkle on the ground of gross neglect of duty and extreme cruelty. The plaintiff entered his voluntary appearance in the suit and did not contest the granting of the divorce. No attempt was made to show ill will or malice of the defendants toward the plaintiff. On the contrary, plaintiff testified that his relations with defendants were pleasant, and that until they came in response to the telephone message mentioned they had treated him well, and neither had said anything

indicating animosity towards him. According to the testimony the sum total of the defendants' offending was the statements quoted. The plaintiff and his wife had been quarreling for months, and defendants had just listened to a "spat" which lasted for about two hours before the remark was made. It was not the first suggestion of a divorce either, as the question had already been talked over between plaintiff and his wife. There was nothing to show that defendants sought to prejudice their daughter against her husband or to alienate her affections for him, if any existed. His testimony tended to show sentiment of friendship for him by the defendants, and there was no attempt to prove that defendants had advised their daughter to separate from him other than has been stated. On the other hand they showed marked distress when they learned of the domestic trouble and had listened to the quarrel which invoked the statement mentioned. The statement itself was not made to their daughter alone but was openly made to both the spouses. In view of the hostility manifested between them during the visit of the defendants, it was not an unnatural nor an unwise declaration for a parent to make. They did not intrude themselves on the quarreling Krenkles, but went there upon a special request, and we discover nothing in the evidence betraying any improper motives or any conduct from which that might be inferred. Malice or bad motives of parents interested in the protection of a child cannot be presumed. The burden is upon the plaintiff to establish improper motives on the part of the defendants, but in this the plaintiff has utterly failed. It has been said that:

"The father stands in a very different relation toward his married son or daughter than a stranger would occupy towards the same persons. Natural affection would imply that the advice and counsel extended to them were prompted by good motives and unworthy objects cannot be presumed. They ought positively to be shown or necessarily deduced from the facts and circumstances detailed." (*Eagon v. Eagon,* 60 Kan. 697, 705, 57 Pac. 942.)

Another quotation from the same opinion is:

" 'The reciprocal obligations of parent and child last through life, and the duty of discharging these divinely implanted obligations is not and cannot be destroyed by the child's marriage.' " (p. 704.)

In *Meek v. Meek,* 118 Kan. 106, 233 Pac. 1032, it was said:

"In an action for alienation of affections brought against a parent of the plaintiff's spouse, proof of a higher degree, if not of a different kind, is required than in the case of a stranger." (p. 108.)

See, also, *Powers v. Sumbler,* 83 Kan. 1, 110 Pac. 97; *Erickson v. Erickson,* 98 Kan. 244, 158 Pac. 48; *Cooper v. Cooper,* 102 Kan. 378, 171 Pac. 5; *Wohlfort v. Wohlfort,* 125 Kan. 234, 263 Pac. 1062.

No testimony is found in the record showing malice or any improper motive, and nothing in the conduct of defendants from which a valid inference might be drawn that defendants were actuated by any improper motives, nor was there any such interference as would give a right of action for alienation of his wife's affections.

The judgment sustaining the demurrer to plaintiff's evidence must therefore be affirmed.