No. 28,308.

HAZEL NANCE, *Appellee*, v. O. O. BEATIE, *Appellant*.

(274 Pac. 219.)

Opinion filed February 9, 1929.

*Hal M. Black* and *Arnold C. Todd*, both of Wichita, for the appellant.
*Tom Harley* and *George Siefkin*, both of Wichita, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This is an appeal from a judgment for damages rendered against O. O. Beatie, a dentist, for the alleged unskillful, improper and negligent treatment of Hazel Nance, in the extraction of a tooth spoken of as an impacted tooth. The principal question involved in the appeal is the alleged insufficiency of the evidence to sustain the verdict and judgment. According to the plaintiff's testimony she visited defendant's office, where examinations were made and X-ray pictures taken of her teeth. The defendant advised her that the tooth should be extracted on the

theory that certain severe pains in the head, neck and arm were the result of an infected tooth. An appointment was made for the operation and at that time the doctor proceeded with the operation, drilled and pried for about an hour in an unsuccessful effort to extract the impacted tooth. She testified that defendant then advised that a healthy tooth in front of it should first be extracted, and that if that was done, he could take the tooth out in fifteen minutes. That tooth was extracted, after which the doctor made another effort and worked for about an hour trying to pull the tooth, but failed to take it out. She testified that the operation caused the loss of feeling in her jaw, that she could not open her mouth more than a quarter of an inch, and that she suffered severe pains in her ear, which extended to her arm and down into her leg, and the further result was that she could not preserve her balance. On account of her condition at the end of the operation, defendant advised her to go to a hospital, where she remained for several days. He treated her several times during that time and several weeks afterwards, when he advised her that the tooth would be all right and that she needed no more attention. Later she borrowed the films taken by the defendant and took them to Doctor Exon, another dentist, who found that there was pus in the jaw, and that the tooth should be drawn. He operated and did extract the tooth with apparently little difficulty, but found infection in the jaw. Shortly after the extraction of the tooth the pains ended and the plaintiff regained weight lost during her suffering.

In the trial, the testimony of the plaintiff, her husband and Doctor Exon, who finally drew the tooth, was produced, and thereupon the defendant filed a demurrer to the plaintiff's evidence, upon the ground that no liability was shown, but the demurrer was overruled, after which the defendant produced testimony to the effect that the practice pursued by the defendant was the customary one in that vicinity, and that the extraction of the healthy tooth was not unusual and could not be regarded as unskillful. Further there was testimony that it was not unusual for a doctor to consume as much as an hour or an hour and a quarter in removing an impacted wisdom tooth. A verdict awarding plaintiff damages in the sum of $1,000 was returned by the jury and judgment thereon was rendered.

All the objections of the defendant center around the contention

that liability of the defendant was not established by competent evidence. No objections are made to the instructions given, and there is an agreement between parties that in such a case there is an implied agreement that the dentist will use only ordinary care and skill, that degree of care and skill ordinarily possessed and exercised by members of his profession in good standing, practicing in the community, and if he follows the established practice and acts according to his best judgment, there can be no liability although injurious consequences follow. It is conceded that before the plaintiff can recover she is required to show that the defendant did not exercise that degree of care and skill, and that his want of skill and care caused the injury of which she complains. The question whether the operation was unskillfully performed, being scientific in nature, must be shown by expert evidence, that of persons having special knowledge and skill in that line. Nonexperts can testify as to external appearances and manifest conditions open to the observance of anyone, but from the nature of the operation the lack of skill and care must be shown by expert evidence. These principles were fully and fairly stated by the court to the jury, but it is argued that the expert evidence produced by plaintiff was insufficient to show a lack of skill and care on the part of the defendant. After producing the physical facts and conditions about which anyone could testify, plaintiff called Doctor Exon, the dentist who extracted the tooth, and he testified in effect that the methods employed by the defendant were those commonly used by the average general practitioner, but later he was asked the following hypothetical question:

"Q. You heard her testimony yesterday, as to what took place in Doctor Beatie's office, and the treatment he gave her, and the number of times she was back, and all that; and, from her testimony, assuming it was true, would you say that she got the customary and ordinary professional treatment that the dentists of this town and city give a patient? A. No; if it was true, I wouldn't think that she did; but I don't believe it is true."

On an objection the court struck out the last clause of the answer. Doctor Blachly, testifying for the defendant, stated that in his opinion there was no negligence of the defendant as to the methods employed by him in the case. He was asked the question:

"Q. If you disregard Doctor Beatie's testimony entirely, and take as truthful only the testimony given here by the plaintiff, would your opinion be the same? A. Yes, sir; it would.

"Q. I am not asking you that, doctor; I am asking you, if her testimony is true, disregarding any other testimony in this case—if her testimony is true, is that the usual, customary and standard treatment given a patient in a dental office in an operation of this kind? A. I never knew of a dentist to use a shoe hook to take out a tooth, and she used that statement, 'used something that looked like a shoe hook'; and, from her testimony, I have no idea of what technique he used, or what instruments he used, or anything."

Other testimony of the same witness was favorable to the defendant. While the expert testimony supporting the verdict is meager and that much evidence of a contrary nature was given in behalf of the defendant, we cannot say that there is not sufficient evidence to uphold the finding of the jury. Manifestly the jury believed the testimony of the plaintiff upon which the hypothetical questions were founded and believed Doctor Exon when he said that plaintiff did not use the ordinary skill and care exercised by dentists in that community. So far as there were contradictions in his testimony, the jury were at liberty to discard part of it and determine which version of his testimony was entitled to credit. In a series of cases extending from *Acker v. Norman,* 72 Kan. 586, 84 Pac. 531, to *Gartner v. Williams Oil & Gas Co.,* 125 Kan. 199, 263 Pac. 778, it has been consistently held that the credibility of witnesses and the weight to be given to their testimony, including that which is conflicting, were questions for the determination of the trier of the facts, and that this court cannot set aside a finding based on conflicting evidence which has been approved by the court. It has been said that:

"The evidence of a single witness may be sufficient to overcome that of a dozen others, and warrant the finding or verdict of a jury. If this evidence is substantial and fairly covers and supports the issue and the finding and verdict based thereon, is approved by the trial court, it is conclusive in this court." (*Gartner v. Williams Oil & Gas Co.,* 125 Kan. 199, 201.)

The trial court having in view the character of evidence necessary to establish liability and having properly instructed the jury with respect to such proof, approved the finding and verdict of the jury. It may be noted that the defendant, after treating the plaintiff's jaw for several weeks after the abortive operation, dismissed her, advising in effect that she did not need further professional attention and that her tooth would be all right, and yet when Doctor Exon extracted the tooth a few days later he found the jaw infected and that there was a free flow of pus from the wound in the jaw.

It is argued that the dismissal of the patient while her jaw was in

that condition could not be regarded as the exercise of ordinary care and skill on the part of the defendant. On the whole case, however, our view is that the testimony, meager as it is, is sufficient to uphold the verdict of the jury and the approval and judgment of the court.

The judgment is affirmed.