No. 18,648.

OLIVE I. SMITH, *Appellant,* v. P. D. SCHRIVER et al., *Appellees.*

SYLLABUS BY THE COURT.

1. EJECTMENT — *Conflicting Evidence — Demurrer Wrongfully Sustained.* When the evidence offered by a plaintiff is conflicting, and certain portion of his own testimony are in conflict with other portions thereof, such evidence should be submitted to the jury, and it is error to sustain a demurrer thereto.

2. LEASE—*"Memorandum in Writing"—Authority of Agent to Sign.* A note or memorandum in writing signed by an agent concerning a lease of land for more than one year does not take such lease out from the operation of the statute of frauds unless authorized in writing by the owner.

3. VERBAL LEASE—*Expenditures on Land by Lessee—Part Performance.* While expenditures made on land by one claiming a lease thereof may sometimes operate as a part performance so as to validate a verbal lease, such expenditures can not ordinarily determine the disputed term of such lease.

Appeal from Chase district court; FREDERICK A. MECKEL, judge. Opinion filed February 7, 1914. Reversed.

*Dennis Madden,* and *Theodore Richardson,* both of Emporia, for the appellant.

*L. S. Ferry, T. F. Doran, J. S. Dean,* all of Topeka, and *Charles E. Davis,* of Cottonwood Falls, for the appellees.

The opinion of the court was delivered by

WEST, J.: Plaintiff sued in ejectment, and from an order sustaining a demurrer to her testimony she appeals. The plaintiff's father, H. C. Vawter, owned the land in controversy and leased it to the principal defendant's father for a term of years expiring March 1, 1910, at an annual rental of $140. Before the lease expired the lessee died and the son became tenant for the remainder of the term. In the summer of 1909 Mr. Vawter was at the place and discussed with the defendant, Schriver, the further leasing to him of the land. The latter desired a five-year term and had written on January 27, 1908, that he would have to sublet and would be obliged to have it for a term of five years at least. A letter from Mr. Vawter during the same month contained the statement that he would wait a while as he was getting old and did not know whether he would live for five years, and at any rate would wait until the lease was out. It seems that the land was deeded to the plaintiff in 1909 and the deed delivered to her about Jaunary 5, 1911. January 23, 1912, she notified the tenant to quit March 1 of that year. Upon the trial the controversy appeared to be whether defendant Schriver was holding under a three-year lease or simply holding over from year to year. Mr. Vawter testified that prior to conveying the land to his daughter he met P. D. Schriver on the farm and leased the premises to him for a term of one year

begining March 1, 1910; that in the conversation when at the place, 1909, he told Mr. Schriver that he would rather let him have it than anybody else for the same money and that the latter agreed to pay $175 for the year 1910; that there was nothing said about what was to be done with the place for the year 1911; that he received $175 rent for that year from Mr. Schriver, who was just a hold-over tenant. The rent for 1910 did not reach Mr. Vawter until early in the following year, and on February 9, 1911, he wrote Mr. Schriver complaining of the delay, stating among other things: "I want more rent for it, and if you can't give me more rent I will see what I can do. I want to know how much you can give me for it and pay the first of December each year for three years and keep up repairs, and I don't want any more of the wild grass plowed up. . . . I can't afford to rent it for what I am getting. . . . I want the best offer you can make me and on return mail if possible. I want you to have the first chance and if you are as slow as you were in my letters I will have the place rented." February 11, 1911, a letter from the defendant to Mr. Vawter stated: "I have subleased the land, as my contract with you was for five years per agreement when you were last here." Two days later Mr. Vawter wrote the following letter:

"*Mr. P. D. Schriver,*

'SIR: Your letter received to-day in regard to renting of my land. When I was out there I said you could keep it for $175.00 a year, payable December 1. There was nothing said about five years, and if there had I could have told you I did not expect to keep the land. I have deeded the land away and don't own it now; and you are so long in replying to me I wrote out there and about renting. I did not know what you were going to *do*. I said you had the place until the first of March, and time was getting short and I was to look after it for the present and I thought I would give you the preference if you would do as well by me as any one, so we agreed on three years' lease, payable Decem-

Smith v. Schriver.

ber first each year and keep up the fences and not plow up any of the wild grass, and that is the reason I wanted to know as soon as possible, so I make this request, as I am waiting on you for this.

Yours respectfully,    H. C. VAWTER."

There was other testimony to the effect that the defendant had claimed to be holding under a three-year lease, and at another time stated that his lease expired in 1912. On redirect examination Mr. Vawter testified that Mr. Schriver never, to his knowledge, accepted a three-year lease.

It is contended that the letter of February 13, 1911, amounted to a note or memorandum, within the statute of frauds, of a three-year lease, and controlled regardless of the other testimony touching the term. It must be remembered, however, that when this was written Mr. Vawter did not own the land, and as no writing of the owner was shown, authorizing him in any way, the letter would not be sufficient under the statute of frauds. (Gen. Stat. 1909, §§ 3837, 3838.) It would seem that it was at one time claimed by Mr. Schriver that he had a five-year lease, at another that he had a three-year lease, and at another that he was simply holding over until 1912, and the discrepancy between Mr. Vawter's statements as a witness and his statement in the letter was equally wide. These discrepancies raised a question of fact for the jury to determine, and the trial court was not authorized to weigh the evidence and reconcile the conflicts therein, and therefore erred in sustaining the demurrer. The rule announced in *Acker v. Norman,* 72 Kan. 586, 84 Pac. 531, applies.

It is argued that as defendant Schriver had taken possession and made expenditures for the purpose of placing the land in condition for use under the contemplated lease, this was a part performance taking the case out of the statute of frauds regardless of any written memorandum. If the existence of a valid lease

were in controversy, this contention would be pertinent. But here it is not the existence but the term of the lease which is in dispute, and we are not aware of any rule by which this question could be determinable by the act of the tenant in preparing for a longer term than the landlord conceded he had, and we have not had our attention called to any authority stating or supporting such a rule.

Some of the letters were offered in evidence after the plaintiff had obtained leave to introduce further testimony in support of her application to reopen the case, after the demurrer to the evidence had been sustained. But having been then received, they appealed at least to the discretion of the court and should therefore be considered and given their proper effect. But whether considered with the evidence already introduced, or whether the latter be viewed alone, the case was left in the condition of presenting a conflict of evidence, which conflict, although partially between different portions of a party's own testimony, was still one for the jury, and not for the court, to reconcile or determine.

The judgment is therefore reversed and the cause remanded for further proceedings.