No. 19,038.

E. D. TERRY et al., *Appellees*, v. THE KANSAS GRAVEL COMPANY (G. ROY PEAK et al., Intervenors, *Appellants*).

SYLLABUS BY THE COURT.

1. CONFLICTING EVIDENCE — *Demurrer Wrongfully Sustained.* It is held that there was error in sustaining a demurrer to the evidence, which is reviewed in the opinion so far as necessary to the decision.

2. PRACTICE—*Reëxamination of Witness—Former Deposition—Contradictory Statements.* The practice is approved of reading pertinent complete parts of the deposition of a person who is again examined as a witness on the trial and whose attention has been properly called thereto to show contradictory statements, instead of limiting the examination to certain detached answers in the deposition.

Appeal from Lyon district court; WILLIAM C. HARRIS, judge. Opinion filed October 10, 1914. Reversed.

*Dennis Madden,* and *Theodore Richardson,* both of Emporia, for the appellants.

*Owen S. Samuel,* of Emporia, for the appellees.

The opinion of the court was delivered by

BENSON, J.: This is an action to foreclose a mortgage upon the real estate and other property of the Kansas Gravel Company, made to Hattie Smith, who died during the pendency of the action. The defend-

ants other than the gravel company are intervenors, holding judgments against that company upon indebtedness accruing after the mortgage had been made and recorded. The controversy therefore is between the mortgagee and subsequent creditors of the gravel company. The theory of the intervenors is that this mortgage is a sham and device of the agents and officers of the company to take away its property by foreclosure, and thus prevent the collection of the judgments. It is insisted that there was no consideration for the mortgage, but that it was made and is being enforced to cover up the property of the gravel company.

The plaintiffs' contention is that the intervenors can not successfully question the validity of the mortgage since it was on record more than a year before their claims accrued, and that there was no evidence tending to prove that it did not represent a valid indebtedness. The district court held that the intervenors' evidence was insufficient to constitute a defense to the mortgage, sustained a demurrer thereto, and gave judgment for the amount of the mortgage debt.

Among the undisputed facts are these: On July 21, 1910, Alva Smith was president of the gravel company, then just organized with headquarters at Aurora, Ill.; W. C. Roberts was treasurer, and Hattie Smith was a stockholder. On that day a mortgage upon the same property covered by the mortgage in suit, was executed in the name of the company as grantor by Alva Smith, its president, to Hattie Smith. On the 28th day of the same month a check for $3000 was given by Alva Smith to Mr. Roberts, the treasurer. The company was debited on the same day on its cash book thus: "Loans and discounts, Alva Smith two thousand dollars, and treasury stock, one thousand dollars." On October 1, 1910, the mortgage in suit was executed for $3000, in the name of the company as mortgagor, by Alva Smith, as president, to Hattie Smith and E. D. Terry, mortgagees, and recorded October 12. On Octo-

ber 10, 1910, a check was given by E. D. Terry & Co. to Alva Smith for $1500. The $2000 mortgage was thereupon released by Mrs. Smith, and the release was recorded. E. D. Terry was a stockholder in the company.

Mr. Roberts, the treasurer of the company, testified that he received the $2000 on the first mortgage. Mr. Terry testified that he gave the $1500 check when the second mortgage was made for a half interest in the $3000 mortgage, $1000 of which went to Mr. Roberts, the treasurer, and $500 to Mrs. Smith. Mr. Roberts testified that the proceeds of the first mortgage were received by the company, deposited in a bank, and paid out for the company. He also testified to the receipt by the company of the additional $1000, when the new mortgage to Mrs. Smith and E. D. Terry was made. There was evidence that the mortgages were made by order of the directors.

Notwithstanding the evidence just referred to, it is contended that the examination of Mr. Smith, the president, discloses that both mortgages were fictitious. First it is alleged that his examination tended to show that the first $2000 was not his wife's money but his own. That fact, if established, might be significant upon some other issue. At that time, however, the company was not indebted. It could make a mortgage to its president direct, or to his wife, to secure the payment of money advanced by him, if he so desired and the transaction was in good faith. The important inquiry about that transaction is whether the money was actually paid and placed in the company's treasury. This, too, is the important fact about the second mortgage. A stockholder or a stockholder's wife is not necessarily precluded from taking a mortgage for money advanced to a corporation and used in its business.

The real question here presented is whether there was any evidence impeaching the consideration of the last mortgage. In determining that question the his-

tory of the transaction, including that of the first mortgage, may be considered. The intervenors may claim protection against a mortgage upon which nothing is really due, although it was in existence when they extended credit to the mortgagor. It should be determined whether there was an indebtedness to be secured by the mortgages, and if so, the amount of such indebtedness. If there was any evidence substantially tending to prove that there was no such indebtedness, or that it was less than the amount claimed and allowed, the court erred in sustaining the demurrer.

In the course of the examination of Mr. Smith as a witness for the intervenor he frequently stated that he did not remember simple details inquired about concerning the execution of the mortgages and the time, place and amounts of the payments of money for which it is claimed they were given. These lapses of memory, if his failure to give such details is to be ascribed to that infirmity, were so frequent and continuous as to suggest an inquiry for the reason. He gave as a reason his suffering from locomotor ataxia. When inquired of concerning the alleged payment of the $1500 by Mr. Terry at the execution of the second mortgage, he testified: "I got it from E. D. Terry and turned five hundred dollars back to Mrs. Smith and one thousand dollars to E. D. Terry."

If he actually turned back $1000 to Terry, then the consideration of the mortgage to that extent was wanting. It is true that at other points in his examination he testified that the $1000 was paid over to Mr. Roberts, the treasurer, and that officer testified that he received it; still, in view of the failure of the witness to state the most ordinary details—a failure inconsistent with candor, unless sufficiently explained—and his positive statement that he paid it back to Terry, a question of fact was presented for the jury and not for the court to determine. It is probable that the court accepted the witness's explanation of his lapse of memory, and believed that the fact of payment to the treasurer of

the company was sufficiently established by the evidence, but this involved the weighing of the testimony of a witness who had made contradictory statements, and passing upon the credibility of his testimony. This may not be done in deciding a demurrer to evidence. (*K. P. Rly. Co. v. Couse,* 17 Kan. 571.)

"Upon a demurrer to the plaintiff's evidence, every propitious fact which it fairly supports is accepted as proved, and every favorable inference which may be fairly deduced must be indulged." (*Hoffmeier v. Railroad Co.,* 68 Kan. 831, 832, 75 Pac. 1117.)

Where evidence is conflicting, and certain parts of a witness's testimony are in conflict with other parts, it should be submitted to a jury. (*Smith v. Schriver,* 91 Kan. 582, 138 Pac. 584.) The same rule applies in cases where a witness becomes confused and his evidence is indefinite and conflicting. It was said concerning the testimony of a witness in *Neiderlander v. Starr,* 50 Kan. 770, 33 Pac. 592:

"In his cross-examination he seems to have been confused, and his evidence is indefinite and conflicting; but the court should have permitted the jury to pass upon the conflicting evidence." (p. 771.)

It was held in *Acker v. Norman,* 72 Kan. 586, 84 Pac. 531, that:

"It is error for a trial court to sustain a demurrer to the evidence because there is a conflict between plaintiff's testimony in chief and that given upon cross-examination. The court can not weigh the evidence." (Syl.)

Some other circumstances, slight, it is true, when considered separately, are pointed out in the examination of Mr. Smith, and perhaps other witnesses, from which inferences unfavorable to the validity of the mortgage as security for its full amount might possibly be drawn. On the whole, it is concluded that the affirmance of the ruling complained of would overthrow an established rule of practice well understood and

9—93 KAN.

long followed safeguarding the province of the jury, as triers of the facts, and limiting the province of the judge upon a demurrer to the evidence to the decision of a question of law alone.

The correctness of a ruling relating to evidence is challenged. After the witness Smith had testified, largely to his want of memory concerning the consideration of the mortgages, the plaintiff offered his deposition, or parts of it, previously taken, as admissions tending to prove want of consideration. The ruling was that after his attention had been called to particular answers in the deposition, they might be read to contradict any contrary statement made by him on the stand. Probably if counsel had taken sufficient time the ruling would have given him the full benefit of the deposition for the purpose desired. However, it often happens that the reading of detached questions and answers from a deposition, without reading the context showing the connection or relation to other parts, is unfair both to the witness and the party, and in such case, within reasonable limitations, such parts of the complete deposition as are pertinent to the particular subject of the oral examination and to which the attention of the witness has been properly drawn, may be read. Besides, in this case, the witness, having succeeded to the rights of his wife as owner of the mortgage, was a party to the suit. However, in the absence of the deposition, or a statement of its contents, we can not say that the court erred in the ruling. If so, the error will probably be avoided in another trial.

Again, complaint is made because the plaintiff was not allowed to state an offer to prove certain matters concerning which objections had been sustained. Such an offer is often a convenient way to present a question of evidence for review—care being taken to so state it that the jury will not confound the offer with the proof. If the right is likely to be abused a direction to reduce the offer to writing will obviate its recital in the hear-

ing of the jury, or the jury may be excused while it is presented. It is not deemed necessary to comment further on this branch of the case.

The judgment sustaining the demurrer to the evidence is reversed, and the cause is remanded for further proceedings.