Mentze v. Rice.

No. 21,459.

A. W. MENTZE, *Appellant,* v. F. J. RICE, *Appellee.*

SYLLABUS BY THE COURT.

CONVERSION OF WHEAT—*Demurrer to Evidence.* A demurrer was sustained to the plaintiff's evidence which entitled him to go to the jury. *Held,* error.

Appeal from Harper district court; GEORGE L. HAY, judge. Opinion filed April 6, 1918. Reversed.

*George E. McMahon,* and *Vernon Day,* both of Anthony, for the appellant; *Leslie Anderson,* of Harper, of counsel.

*J. G. Washbon,* of Harper, *J. N. Tincher,* and *A. L. Noble,* both of Medicine Lodge, for the appellee.

The opinion of the court was delivered by

WEST, J.: The plaintiff sued to recover for the conversion of certain wheat, and from an order sustaining a demurrer to his testimony he appeals.

On or about September 3, 1914, plaintiff deposited in the grain elevator of the E. A. Wales Milling Company at Harper 735 bushels of wheat, taking the following receipt therefor:

"E. A. Wales, Sec'y., Treas., and Gen. Man'gr. Prices subject to change without notice. E. A. Wales Mill Company, Ltd. Capacity: 300 barrels flour, 100 barrels meal. Harper, Kansas, Sep. 3, 1914.

"Recd of Mr. A. W. Mentze 628 bushels test 57 pounds and 107 05-60

at test 59 pounds for storage at the rate of one half cent per bu. per month and if sold to the mill there is no storage.

                 "E. A. Wales Mill Co., By E. A. Wales."

About a week later the milling company was incorporated, E. A. Wales becoming its general manager, and the defendant its president and a member of the board of directors. The allegation was that afterwards, and before the 8th of February, 1915, Wales and other officers, agents and servants of the corporation "did willfully and wrongfully convert the said wheat of said plaintiff to the use of said corporation, with the knowledge, acquiescence and consent of said defendant, F. J. Rice."

At about the last-named date plaintiff tendered to Wales at the office of the corporation charges due on the wheat and demanded its return, which was refused. The answer admitted the incorporation on September 9, and that the defendant was the president and a member of the board of directors. There was also an averment that any business done before that date was by Wales individually, and not by the corporation.

Many of the facts were before us in *The State v. Wales,* 98 Kan. 790, 160 Pac. 204. The only question is whether or not the plaintiff's evidence was such as to require its submission to the jury. Counsel for the defendant say in their brief that there were no facts or circumstances shown from which "any reasonable inference could be drawn either that the plaintiff's wheat was converted to the use of the corporation or that the defendant had any knowledge of its disposition, and much less that he consented to or acquiesced in any disposal which was made of it."

The plaintiff, who has received nothing out of the transaction except experience, takes a different view of the evidence.

The rule is that a demurrer to the defendant's evidence should not be sustained unless there is an entire absence of proof tending to show a right to recover. (*Brown v. Cruse,* 90 Kan. 306, 133 Pac. 865.) Such demurrer admits every fact and conclusion which the evidence most favorable to the other party tends to prove. (*Christie v. Barnes,* 33 Kan. 317, 6 Pac. 599.) And it admits, not only the truth of the facts directly proven, but also all that may properly be inferred from those facts. (*City of Syracuse v. Reed,* 46 Kan. 520, 26 Pac. 1040.)

Mentze v. Rice.

The court must view the evidence in the light most favorable to the plaintiff and allow all reasonable inferences in his favor. (*Rogers v. Hodgson,* 46 Kan. 276, 26 Pac. 732; *Buoy v. Milling Co.,* 68 Kan. 436, 75 Pac. 466; *Hoffmeier v. Kansas City-Leavenworth Rld. Co.,* 68 Kan. 831, 75 Pac. 1117.)

The plaintiff testified that on February 8, 1915, he tendered the storage money and made a demand for his wheat or the money; that before that he had been to see Mr. Wales, who told him to give him a few days' time, that he was trying to make arrangements to get the money.

"I was at the mill when Wales was gone and talked to Mr. Rice about it. He said of course Mr. Wales would be back."

When he went through the mill and elevator he found it empty.

Mr. Oller testified that he entered into conversation with Mr. Rice in the fall of 1914, who said he was going to start at the ground floor and work up, that he always wanted to be a miller; that while the witness was delivering his wheat there Mr. Rice weighed one load and went to the elevator with him and dumped it into the elevator; that he had wheat deposited there which he was to take out in flour, and Mr. Rice gave him the flour. In the heading to the receipt witness received Mr. F. J. Rice was named as president. Another witness testified that he had a conversation with Mr. Rice about the 27th of January. He and the witness last referred to went to see if they had any wheat in the mill and asked permission of Mr. Rice to go through, and he said they could not do so with his consent; that the next day Mr. Rice met him up town and told him there were about four or five hundred bushels in the mill. Another witness testified that he was employed by the milling company in the fall of 1914 for about three months, and that Mr. Rice was around most of the time.

The defendant himself testified that when the corporation was organized the wheat that was in the mill was not to be taken out and disposed of by Mr. Wales or anybody.

"Mr. Wales was to open up an account with himself. The wheat that was in the mill was n't taken out.

"Q. Just remained there? A. Yes sir.

"Q. It was there when you took possession of the mill—remained there? A. I believe so.

"Q. . You know so, do you not? A. Yes sir.

.    .    .    .    .    .    .    .    .    .    .    .    .

"Q Was there any arrangement made there between you as to how Mr. Wales was to take his wheat out of the mill, if he had any in there? A. He was to credit himself for it, he was to open up a new set of books. I could n't say whether he done it or not."

Without quoting any further testimony, the foregoing appears to furnish fair grounds for the conclusion, or at least for the inference, that when Mr. Rice went into the elevator and became president of the corporation the plaintiff's wheat was in storage, and that the defendant was the active man, or at least one of the active men, in charge of the concern for several months. It appears that the corporation went into bankruptcy, and *Sweet v. Bank*, 69 Kan. 641, 77 Pac. 538, is invoked in support of the doctrine that the defendant should not be held liable unless he had actual knowledge, but it is not at all probable that during the months he took so active a part he was without knowledge as to what became of the wheat stored in the elevator.

The plaintiff may or may not be entitled to recover in this action. It is simply and only held that his evidence entitled him to go to the jury, and that it was error to sustain a demurrer thereto.

The judgment is reversed and the cause is remanded for further proceedings.