No. 22,731.

IRENE BRACKVILLE, by ANTOINETTE BRACKVILLE, her Next Friend, *Appellee*, v. THE SOUTHWESTERN BELL TELEPHONE COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

1. SERVICE OF PROCESS—*Telephone Corporation Being Operated by Postmaster-general.* Service of summons upon a telephone corporation, shown by the return to have been made by the delivery of a copy to its managing agent, will not be set aside merely for the reason that at the time of such delivery its system had been taken over and was being operated by the postmaster-general.

2. NEGLIGENCE—*Pleadings—Evidence.* The negligence found by the jury is held to be within that pleaded and to be supported by some evidence.

3. SAME—*Contributory Negligence—Burden of Proof—Instructions.* Any tendency of an instruction, relating to the burden of proof on the issue of contributory negligence, to mislead the jury into supposing that

that defense could not be established by the plaintiff's own testimony, is held to have been cured by an instruction immediately following it, to the effect that in determining the issues all the testimony was to be considered, as offered by the plaintiff or the defendant.

Appeal from Wyandotte district court, division No. 1; ED-WARD L. FISCHER, judge. Opinion filed June 5, 1920. Affirmed.

*C. Angevine*, of Kansas City, *D. E. Palmer*, and *C. J. Evans*, of Topeka, for the appellant; *J. W. Gleed*, of Topeka, and *D. A. Frank*, of St. Louis, Mo., of counsel.

*James K. Cubbison*, *William G. Holt*, and *T. A. Milton*, all of Kansas City, for the appellee; *Charles A. Blair*, of Kansas City, of counsel.

The opinion of the court was delivered by

MASON, J.: Irene Brackville was injured by a fall while in the employ of the Southwestern Bell Telephone Company, a corporation. She brought an action against it, alleging her injury to have been due to its negligence, and recovered a judgment, from which it appeals.

1. The accident occurred on June 16, 1918. On July 22, 1918, the postmaster-general took possession of the telephone system owned and operated by the defendant. The petition in the present action was filed on January 21, 1919. The return on the summons recited that it had been served upon the defendant by the delivery of a copy to W. W. Yager, its managing agent, its president and the chairman of its board of directors not being found in the county. Under a special appearance the defendant moved to quash the service upon the ground that Yager was not, at the time the copy of the summons was delivered to him, the agent of the corporation, but of the postmaster-general. The overruling of that motion is assigned as error.

This court has held that under a statute authorizing service to be made on a railroad company through its ticket agent or station keeper, personal jurisdiction of such a company which is in the hands of a receiver cannot be obtained by the delivery of a copy of the summons to one who had been employed by it in that capacity and had continued to perform the same duties for the receiver. (*Chilletti v. Railway Co.*, 102 Kan. 297, 171

Pac. 14; *Vann v. Railway Co.*, 103 Kan. 857, 176 Pac. 652.) There is a difference of judicial opinion on the question (Note, 47 L. R. A., n. s., 179; *Missouri, K. & T. Ry. Co. v. Hudson* [Okla.] 175 Pac. 743), but it was settled for this state by the decision first cited. While the situation there passed upon has much in common with that now under consideration, a material difference is to be noted in the relation of a company, as well as its agents, on the one hand, to a receiver appointed to take charge of its business and, on the other, to the postmaster-general upon his assuming possession of its system by proclamation of the president under the federal statute. Upon the appointment of a receiver the possession of the corporation is immediately and completely ousted, and the individuals who have been serving it become at once, as by an original selection, agents and employees of the new operator, charged with the duty of rendering like services under direct responsibility to him. The president's proclamation under which the postmaster-general took over the management of the telegraph contained these paragraphs:

"It is hereby directed that the supervision, possession, control, and operation of such telegraph and telephone systems hereby by me undertaken shall be exercised by and through the Postmaster General, Albert S. Burleson. Said Postmaster General may perform the duties hereby and hereunder imposed upon him, so long and to such extent and in such manner as he shall determine, through the owners, managers, boards of directors, receivers, officers, and employees of said telegraph and telephone systems.

"Until and except so far as said Postmaster General shall from time to time by general or special orders otherwise provide, the owners, managers, boards of directors, receivers, officers and employees of the various telegraph and telephone systems shall continue the operation thereof in the usual and ordinary course of the business of said systems, in the names of their respective companies, associations, organizations, owners, or managers, as the case may be."

During the existence of the status established by the proclamation—until the making of some further order—the defendant corporation continued to function, as an instrument of the government, which availed itself not merely of the individuals who had been engaged in carrying on the business, but of the entire machinery so employed, including the company itself (the "owner"), with its board of directors as well as its other officers, agents and employees. Upon each person acting for the company in any capacity there devolved in

virtue of his place in the corporate organization the obligation to continue in the performance of his accustomed duties in behalf of the new head and subject to his control, but as a part of the original administrative machinery.

Moreover, the statute involved in the Chilletti case authorized service to be made upon the "agent to sell tickets or station-keeper" of any railroad company which had failed to designate a person upon whom service might be made. (Gen. Stat. 1915, § 6963.) Its obvious purpose was to enable service to be made under such circumstances upon the individual who was actually selling tickets or keeping a station for the company, qualifying him to receive it by virtue of that occupation. The statute under which service was made in the present case applies to corporations generally, and authorizes service in the absence of its president (or chief officer, by whatever name known) upon its "cashier, treasurer, secretary, clerk or managing agent." (Gen. Stat. 1915, § 6961.) An alternative service is then provided if none of "the aforesaid officers" can be found, the "managing agent" being thereby characterized as an officer of the corporation. The term managing agent carries with it a suggestion of supervising those active business operations which would pass under the supervision and control of the government upon its assumption of possession, but there is no presumption that an officer of the corporation would thereby lose his official standing, although a mere employee might cease to be in any way its representative when his performance of services for it was discontinued.

In the affidavit in support of the motion attacking the service it was stated that at the time the copy of the summons was delivered to him Yager was not the managing agent of the defendant. This statement, however, must from the context be interpreted as a mere conclusion of law—an interpretation of the consequences deemed to follow from the president's proclamation. It is fairly to be assumed that if any other basis existed for challenging his capacity—for instance if the matter were affected by some subsequent order of the postmaster-general—the facts in that respect would have been specifically stated. We conclude that the motion to set aside the service was properly overruled.

2. The defendant asserts that in the light of the pleadings and special findings there was no evidence whatever that the injury complained of was due to any negligence on its part. The plaintiff gave testimony to this effect: She had been sent to a lavatory on the floor below that on which she was working to wash a pin tray, going down the elevator and through a hall, the floor of which was at this time perfectly dry. When she returned it had been mopped or scrubbed for about half its length by the janitor, who, however, was not at that moment in sight. The wet floor attracted her attention—she saw that it was wet, although it was hard to see, the lights not being on. A slimy substance, which looked like soap— which was soap or something used for the same purpose— was on the floor. She was very careful. She did the best she could to get across. Her feet slipped on the slimy substance and she fell. She put out her hand and tried to catch herself and it slipped on the same substance. There was a lot of it at that particular place.

Among other forms of negligence alleged in the petition was the failure to provide a safe place to work—a safe hallway; permitting the floor of the hallway to be made wet, slippery and soapy at a time when she was required to use it; and putting an unnecessary amount of water and soap upon it. The jury returned an affirmative answer to the question whether the hallway was being scrubbed in the usual manner. They were asked, if they found the janitor was negligent in any respect, to state in what such negligence consisted. They answered: "In using too much water and solution, and in not drying the space as same was applied." The language used by the jury is of course to be given any reasonable interpretation of which it is capable that is consistent with the general verdict. The evidence which has been stated warranted a conclusion that the defendant was negligent in allowing the hallway, at a time when the plaintiff was required to use it, to be in an unsafe condition by reason of the presence of such an amount of soap and water as to make it very slippery—a condition which was unnecessary because it could have been avoided either by the use of a less quantity originally, or by causing the part of the floor to which the solution was applied to be dried before any one was required to use it—so that a

Brackville v. Telephone Co.

dry and therefore safe passageway might have been kept open. We think it requires no undue liberality of construction to say that this is substantially what the jury meant, and that the negligence found is within that pleaded. The fact that the method pursued in cleaning the floor was that usually employed by the janitor or the defendant would not conclusively establish that it was nonnegligent.

3. Complaint is made of an instruction concerning the burden of proof as to contributory negligence, on the ground that it was substantially similar to those which have been condemned as likely to be understood by the jury as meaning that such defense cannot be established by the plaintiff's own evidence. (*Railway Co. v. Merrill*, 61 Kan. 671, 60 Pac. 819; Note, 33 L. R. A., n. s., 1178.) The instruction challenged read as follows:

"The burden of proof is on the defendant to prove by the preponderance of the evidence substantially as alleged in its answer that the plaintiff was guilty of negligence which directly contributed as a proximate cause to her injury, and also to prove that the plaintiff was injured as a result of the usual and ordinary risks incident to her employment."

Whatever tendency this language may have had to mislead the jury into supposing that they were not entitled to consider the plaintiff's evidence in determining whether she had been guilty of negligence contributory to her injury, we think was corrected by the instruction by which it was immediately followed, which read: "In determining the issues in the case, you will consider all the testimony in the case, as introduced by plaintiff or defendant." (*Railway Co. v. Dawson*, 64 Kan. 99, 114, 67 Pac. 521; *Railroad Co. v. Burgess*, 72 Kan. 454, 83 Pac. 991.)

The judgment is affirmed.

PORTER, and DAWSON, JJ., dissent from the part of the decision holding that the evidence was sufficient to warrant a finding that the plaintiff's injury was due to the negligence of the defendant.