No. 26,084.

CHLOE E. PHILLIPS, *Appellee,* v. COMMERCIAL NATIONAL BANK, *Appellant.*

SYLLABUS BY THE COURT.

1. MASTER AND SERVANT—*Liability for Injury to Servant—Sufficiency of Evidence.* In an action by an employee against her employer for damages alleged to have been sustained by her through falling on a slippery floor and down a stairway in her employer's banking establishment, the record examined and held sufficient to sustain her cause of action as against a demurrer to plaintiff's evidence.

2. SAME—*Risks Assumed by Servant—Question for Jury.* The question whether plaintiff assumed the risk of injury to herself in walking over the floor in defendant's banking house was one for a jury's determination.

3. TRIAL—*Verdict—Special Interrogatories—Answer of "Doubtful" to Controlling Issue.* Where one of the issues of controlling importance was whether plaintiff's disability, injuries and maladies were caused by falling on a slippery floor negligently maintained by the defendant in December, 1920, or were the result of an attack of influenza in March, 1922, and there was competent testimony to determine that controverted issue, and the jury by a special finding declared they were doubtful on that point, but rendered a general verdict in plaintiff's behalf, a judgment entered thereon was erroneous.

4. SAME—Other special findings of the jury examined and criticized for want of candor and consistency.

Appeal from Wyandotte district court, division No. 1; EDWARD L. FISCHER, judge. Opinion filed October 10, 1925. Reversed.

*E. S. McAnany, M. L. Alden* and *T. M. Van Cleave,* all of Kansas City, for the appellant.

*David F. Carson,* of Kansas City, *William S. Hogsett* and *Murat Boyle,* both of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

DAWSON, J.: Plaintiff brought this action for damages for injuries alleged to have been sustained by her in falling on a slippery floor and down a stairway in the banking house of defendant, her employer. She charged that the defendant bank was negligent in maintaining the floor in a slippery condition; that the floor was dangerous to walk upon; that defendant knew, or in the exercise of ordinary care could have known, of its dangerous condition in ample time

---

1. Master and Servant, 26 Cyc. p. 1447.   2. Id., 26 Cyc. p. 1478, 49 L. R. A. 43; L. R. A. 1916E, 209; 18 R. C. L. 683.   3. Trial, 38 Cyc. p. 1930.   4. Trial, 38 Cyc. pp. 1921, 1926.

to have remedied its defects before it caused plaintiff's injuries; that defendant negligently failed to furnish plaintiff with a safe place in which to work; and she alleged that she did not know of the dangerous condition of the floor and of the likelihood of injury from walking thereon, and could not have known of its dangerous condition by the exercise of ordinary care on her part.

The floor in question was that of a room in the second story of a building which the bank had rented shortly before plaintiff entered its service. A stairway led from this room down to the bank's main business quarters. In this second-story room the bank established its auditing and transit department. Plaintiff's desk was in this room near the head of the stairway. Some fifteen or eighteen clerks worked on the same floor. When the bank acquired possession of this room it remodeled it to some extent, and the floor was treated with some sort of floor stain, wax or varnish. Every evening the janitor spread a sweeping compound over the floor and swept it. Once or twice, a few weeks apart, the floor was treated with some sort of oil or other preparation for floors. This would be applied on a Saturday so that it might have until Monday to dry. The times and manner of treating this floor is the subject of much pother in the abstracts and briefs of the parties, and we merely adopt enough of what is least controversial about it to form a fairly intelligible narrative. One Monday morning, December 20, 1920, after one of these special floor treatments, it was noticed that the floor was not dry. Plaintiff and some of the witnesses testified that the floor was "very wet looking as though something had been done to it." On Tuesday it was still wet looking, and on Wednesday it looked the same, but "was probably drying a little bit." On Thursday the floor "was getting sticky," according to plaintiff. She also testified that it was slippery. On that Thursday afternoon plaintiff started for the head of the stairs to carry some papers down to an officer of the bank. Her foot slipped and she pitched forward and fell headlong down the stairway, receiving various injuries, the severity of which was not then fully realized if the testimony concerning them adduced in her behalf some two or three years afterward is true. An officer of the bank assisted her to rise; she delivered the papers, and then lay down on a couch in the rest room for half an hour. Then she got up and attended to her duties until the close of the day's work. She then joined her brother and

they dined together. She refrained from telling him about her fall because he would tell her mother and thus spoil her mother's Christmas with anxiety. She purchased some liniment to bathe her arm and hand. She went to bed and stayed there until the next Wednesday, and then resumed her work at the bank, a half day at a time, for four days. After that she worked at the bank steadily and regularly until March 2, 1922, for fourteen months, when she was taken ill with influenza. Following that illness plaintiff had a succession of ailments which repeatedly compelled her to go to a hospital and prevented her resumption of work at the bank. The defendant carried her on its payroll for two months. Since she had the influenza plaintiff has been altogether incapacitated. She was carried into the court room on a stretcher to give her testimony in this case.

Defendant's answer contained a general denial, pleaded plaintiff's contributory negligence, and alleged that the condition of the floor was open and obvious and that whatever risks plaintiff was subjected to were assumed by her.

On the issues joined, testimony for the litigants was presented at length. Defendant's demurrer to plaintiff's evidence was overruled. The jury returned a verdict for $10,000 in plaintiff's favor, and answered certain special questions. These read:

"Q. 1. Did the plaintiff on Monday, Tuesday, Wednesday and Thursday preceding her fall on December 23, 1920, go up and down the stairs and cross the place where she fell, from ten to fifteen times each day? A. Yes.

"Q. 2. Did any of the fifteen to eighteen clerks employed upstairs in the transit department or any of the other clerks or officers of the bank, who had occasion to go upstairs to the transit department, crossing the place where plaintiff testifies she fell, ever fall upon said floor at any time during the year 1920? A. No.

"Q. 3. Was the plaintiff in 1920, preceding the time she fell, used to walking on oiled, waxed and polished floors? A. Yes.

"Q. 4. On Thursday when plaintiff walked over the floor in the vicinity of the stairs where she testifies she fell, did the floor appear to the plaintiff to be drying and kind of sticky? A. Yes.

"Q. 5. Was the floor slick or slippery where plaintiff says she slipped? A. Yes.

"Q. 6. If you answer the preceding question No. 5 'yes,' was its condition apparent and obvious to the plaintiff on the Monday, Tuesday, Wednesday, and part of Thursday, before she slipped? A. Yes.

"Q. 7. If you answer the preceding question No. 6 'no,' what was there to prevent plaintiff from seeing and appreciating that it was slick or slippery on each of these days? A. Nothing.

"Q. 8. If you answer question No. 5 'yes,' did the plaintiff appreciate the danger of walking on such slick or slippery floors?　A.　Do not know.

"Q. 9. If you answer the preceding question No. 8 'no,' state what prevented plaintiff from appreciating the danger of walking on such slick or slippery floor?　A.　Too busy.

"Q. 10. Was the condition of the floor where plaintiff says she fell plain and obvious to persons walking over the same?　A.　Yes.

"Q. 11. Did plaintiff know or have ample opportunity to know of the condition of the floor where she says she slipped prior to and at the time of her fall?　A.　No.

"Q. 12. Did plaintiff about March 2, 1922, go to bed with influenza and suffer from influenza a number of days?　A.　Yes.

"Q. 13. Has plaintiff been an invalid practically all the time, largely confined to bed, since she first took to bed with influenza?　A.　Yes.

"Q. 14. Was the attack of influenza the cause of her present condition?　A. Doubtful.

"Q. 15. Were the plaintiff's appendix and Fallopian tubes found to be in a catarrhal condition and the appendix removed by operation?　A.　Yes.

"Q. 16. If you find that the defendant was guilty of any negligence that caused injury to the plaintiff, state fully of what that negligence consisted? A.　Slippery floor."

Judgment was entered in favor of plaintiff, and defendant appeals, assigning certain errors, which will be noted.

1. Defendant contends that its demurrer to plaintiff's evidence should have been sustained, on the theory that she had shown no negligence on the part of defendant. In support of this it makes an argument deduced from that part of the evidence which would indicate that there was nothing the matter with the floor, and that its condition had not been materially changed during the latter half of the year 1920; that it had been varnished in June and oiled in July and again in October, and swept every night with a sweeping compound, and that such treatment is the characteristic and proper way to care for an office floor in a business establishment. It argues also that the fact that plaintiff slipped and fell on the floor is no proof that the floor was defective or that the bank was negligent in maintaining it. It argues, further, with the support of respectable authorities, that it is not negligence to maintain smooth, slick, oiled floors in business houses; that such floors are common even in private residences. Plaintiff admitted her familiarity with such floors, and the possibility of slipping on such a floor is open and apparent. Defendant also presses upon our attention the fact that plaintiff and some fifteen or eighteen other clerks used this floor and stairway many times a day, and that practically all the bank

Phillips v. Commercial Nat'l Bank.

force, some forty-five people, used it daily, as well as clerks and messengers from other banks, and that no mishap befell any of them because of the floor.

Defendant also emphasizes, perhaps justly, the fact that plaintiff habitually wore high-heeled French shoes, which, according to one witness who testified from experience, have the effect of causing the wearer to tire easily and to catch the heel and stumble, especially on stairways. In view of these facts and considerations, defendant asks this court to declare that plaintiff failed to establish any actionable negligence. But to give assent to this proposition this court would have to disregard certain material features of the evidence for plaintiff. She herself testified:

"Just previous to my fall the floor had been very wet looking for several days as though something had been done to it.

"Q. About how many days before your fall was it that this—it had this wet appearance? A. On Monday, previous to my fall on Thursday, was the first that I noticed it. . . .

"Q. Now, had you ever, during the period you had been at the bank, from the first of July, 1920, up until the time of Monday before this fall of Thursday, observed this floor in this condition before? A. No, sir. . . .

"Q. Just describe its appearance from Monday up until Thursday, Miss Phillips. A. When we went down Monday morning it was wet looking, as though it had been scrubbed; and it was very cold on Monday and the heat was poor, and we thought probably it didn't dry; on Tuesday it was still wet looking. On Wednesday it looked the same, and it probably was drying a little bit. On Thursday we could tell distinctly that it was getting sticky and that something that was not evaporating or was not absorbing had been put on it. . . .

"Q. Now, from July 1st until the 23d, or until the month of December, was there any change in the appearance of the floors in the transit department? A. Yes, sir.

"Q. What was the change? A. On Monday previous to my fall it looked like it had been scrubbed. It was very wet looking on Monday morning. . . .

"Q. Looked as though it had been scrubbed? A. Yes, sir.

"Q. Now, prior to that time, during the period of time you were there, that is, from July 1st until that Monday morning, had there been any change in the appearance? A. I don't recall any. . . .

"Q. But on that Monday do you recall it had the appearance of having been scrubbed? A. Very wet looking.

"Q. And was wet looking? A. Yes, sir.

"Q. Now, on that Monday you had occasion to walk over the floor and up and down stairs probably about fifteen or twenty times? A. Yes, sir. . . .

"Q. Now, on Tuesday, what was the appearance of the floor? A. Practically the same. . . .

"Q. And was there any change in the condition of the floor on Thursday? A. The floor was getting very sticky.

"Q. It was getting sticky? A. Yes, sir."

After her accident and after lying down in the rest room for half an hour, plaintiff examined the floor at the place where she slipped and fell. She testified:

"Q. And what did you find the condition of the floor to be at that point, with reference to being slippery or otherwise? A. It was slippery. . . .

"Q. Did you know at that time, or had you observed, that this floor was slippery with this stuff that had been put on it, that it had made it slippery? A. I knew it was sticky.

"Q. I understand; but did you know it was slippery and in the condition you found it to be then? A. No. . . .

"Q. That afternoon you went up and down the stairs several times again, did you not, before 5:30? . . . A. Yes, sir.

"Q. You walked over those same stairs in the same way, without any slip, did you not? A. I was careful after that.

"Q. You were careful after that. Then you had not paid attention to where you were walking, had you? A. I was just attending to my general business.

"Q. What is that? A. I was just attending to my general work.

"Q. But after that time, you watched your step when you were going up or down the stairs, did you not, that day? A. Yes, sir.".

There was testimony of other witnesses which tended to show that not more than a few days before the accident the appearance and condition of the floor was altered, that something had been put on it which was not absorbed; to some witnesses the floor looked damp or oily, to some it felt sticky when walking over it, and eventually it became slippery. One witness testified that the floor was slippery when plaintiff fell on it, but that the floor had been in that slippery condition for a month or two.

There was a good deal of dispute concerning the propriety of treating the floor the way it was treated, putting on varnish first, and some weeks later putting oil on it, and repeating the oil treatment some weeks later. An argument is made for plaintiff that oil should not be used on a varnished floor. For defendant it is contended, with support of some of the testimony, that the varnish and all its effects had disappeared before the oil was applied to the floor. These are details which may properly concern the triers of the facts, but are of little consequence where the question is solely whether defendant's demurrer should have been sustained. (*White v. Cloak & Suit Co.*, 106 Kan. 239, 187 Pac. 670; *Brackville v. Telephone Co.*,

107 Kan. 130, 190 Pac. 773.) On the record presented for our perusal it must be held that the trial court did not err in overruling defendant's demurrer to plaintiff's evidence.

In *Mentze v. Rice,* 102 Kan. 855, 172 Pac. 516, it was said:

"The rule is that a demurrer to the defendant's evidence should not be sustained unless there is an entire absence of proof tending to show a right to recover. (*Brown v. Cruse,* 90 Kan. 306, 133 Pac. 865.) Such demurrer admits every fact and conclusion which the evidence most favorable to the other party tends to prove. (*Christie v. Barnes,* 33 Kan. 317, 6 Pac. 599.) And it admits not only the truth of the facts directly proven, but also all that may properly be inferred from those facts. (*City of Syracuse v. Reed,* 46 Kan. 520, 26 Pac. 1040.) The court must view the evidence in the light most favorable to the plaintiff and allow all reasonable inferences in his favor." (p. 856.)

In *Dudas v. Railway Co.,* 105 Kan. 451, 185 Pac. 28, the plaintiff charged the defendant with negligence. The trial court sustained a demurrer to plaintiff's evidence. This court said:

"There were some contradictions in the testimony of the plaintiff as to his approach to and his actions at the crossing, of which much is made in the argument of defendant. The case, however, having been determined on a demurrer to plaintiff's evidence, the court could not weigh the testimony or treat the evidence in his favor as having been neutralized by the contradictory evidence. As the case was submitted, it became the duty of the court to accept as proved every fact supported by any of the plaintiff's evidence and to indulge in every favorable inference that might be deduced from it. It has been held that where the evidence of a witness is conflicting and one part is contradictory of another, it should be submitted to the jury. (*Smith v. Schriver,* 91 Kan. 582, 138 Pac. 584. See, also, *Neiderlander v. Starr,* 50 Kan. 770, 33 Pac. 592; *Acker v. Norman,* 72 Kan. 586, 84 Pac. 531; *Terry v. Gravel Co.,* 93 Kan. 125, 143 Pac. 485.)

"While the testimony is somewhat meager, and to some extent conflicting, as to his injuries having resulted from the negligence of the defendant, a careful reading of it satisfies us that it was sufficient to require the submission of the case to the jury." (See, also, *Custer v. Royse,* 104 Kan. 339, 341, 342, 179 Pac. 353; *Stice v. Railway Co.,* 110 Kan. 763, 205 Pac. 616.)

2. Nor can it be declared as a matter of law that plaintiff assumed the risk of injury in walking on the floor in question. The doctrine of assumption of risk presupposes that the danger is one which inheres in the nature of the business in which an employee is engaged, and that the employee is aware of that danger and continues voluntarily in the employment notwithstanding its inherent, dangerous character. The evidence summarized and set out above to show that the question of defendant's negligence was a fair one for a jury shows also that the question whether plaintiff assumed

the risk involved in walking over this floor was likewise a jury question. Did she know the floor was dangerous to walk over? Did she know it was slippery at or before the time she slipped and fell on it? Was the dangerous nature of the floor obvious to an employee of ordinary prudence and caution? Was the floor in the same condition during the four days immediately preceding the plaintiff's accident as it was during the preceding months since plaintiff entered defendant's service in July? These questions are necessarily involved in a correct determination of whether or not plaintiff assumed the risk, and of course they are ordinary questions of fact for a jury to settle. (*Tecza v. Sulzberger & Sons Co.,* 92 Kan. 97, 140 Pac. 105; *Brizendine v. Railroad Co.,* 96 Kan. 691, 153 Pac. 495; *Barnes v. Akins,* 101 Kan. 359, 166 Pac. 474; *Brackville v. Telephone Co.,* 107 Kan. 130, 190 Pac. 733; *Fangmeier v. Missouri Pac. Rld. Co.,* 118 Kan. 701, 236 Pac. 660.)

In *Starkweather v. Dunlap,* 103 Kan. 425, 173 Pac. 1122, it was said:

"Cases are cited on the point that where the workman knows or has as good opportunities for knowing the extent and imminence of the danger as his employer, such workman who remains in the place of danger assumes the risk (*Metz v. Railway Co.,* 90 Kan. 463, 465, 135 Pac. 667; *Barnes v. Akins,* 101 Kan. 359, 166 Pac. 474), even although the employer has assured him that the place is not dangerous. (*Walter v. Scott,* 67 Kan. 814, 64 Pac. 615; 26 Cyc. 1213.) Defendants contend that such were the facts of this case. A jury might think so (*Sappenfield v. Zinc Co.,* 94 Kan. 22, 27, 145 Pac. 862; *Morgan v. Rainier Beach Lumber Co.,* 51 Wash. 355, 98 Pac. 1120; 22 L. R. A., n. s., 472, and note); but when a court is called on to rule on a demurrer to the evidence a most tolerant and generous view of the evidence must always be given. (*The State, ex rel., v. Gerhards,* 99 Kan. 462, 464, 162 Pac. 1149, and citations therein; *Russell v. Considine,* 101 Kan. 631, 634, 168 Pac. 1095; *Mentze v. Rice,* 102 Kan. 855, 856, 172 Pac. 516; *Bushey v. Coffman,* ante, p. 209, 173 Pac. 341.)" (p. 427.)

3. We now come to a certain phase of this appeal which is really serious. The jury specially found that the floor was slippery (finding 5) and that it had been in that condition for nearly four days preceding the accident (finding 6), and that there was nothing to prevent the plaintiff from seeing and appreciating that it was slippery on each of those days (finding 7), and the jury also made the rather evasive and uncandid answer that they did not know whether she appreciated the danger or not (finding 8); but if she did not appreciate the danger it was not because the slippery nature of the floor was not obvious, for they said it was both apparent and ob-

Phillips v. Commercial Nat'l Bank.

vious, but because plaintiff was "too busy." Too busy for what? Too busy to exercise her ordinary faculties of observation and intelligence to avert injury to herself from an obvious and apparent danger? The record does not show that defendant was such a harsh and exacting taskmaster that the duties imposed by it on plaintiff were so rigorous and exacting that she was prevented from seeing the slippery condition of the floor. (Findings 5, 6 and 10.) There is a seeming inconsistency between findings 7 and 11, the former declaring that there was nothing to prevent plaintiff from seeing and appreciating that the floor was slippery, and the latter declaring that she did *not* have ample opportunity to know its condition prior to her fall.

These findings referred to above are not easily reconcilable with each other or with the general verdict; but without deciding whether they themselves would compel a reversal of the judgment, the consequences attaching to special findings 12 to 15, inclusive, and particularly finding No. 14, may not be avoided. The latter reads:

"Q. 14. Was the attack of influenza the cause of her present condition? A. Doubtful."

That is to say, the jury were admittedly in doubt whether plaintiff's condition was caused by her fall on defendant's floor in 1920 or by influenza which afflicted her in 1922. Now that matter was of prime importance in this lawsuit. On plaintiff's behalf six doctors testified that in their opinion the condition of the plaintiff was due to the fall she received at the defendant's bank on December 23, 1920, and part of plaintiff's own testimony was to the same effect. On the other hand, six other doctors, presumably of equal professional learning and integrity, testified that in their opinion the condition of the plaintiff was the direct result of her attack of influenza in March, 1922, and that her condition could not be attributed to her fall at the bank. In addition to the latter testimony there was the significant fact that within a few days after her accident plaintiff was back on duty at the bank and faithfully and efficiently performed her duties therein for the long period of fourteen months and until she was taken ill with influenza. There is also the fact of some potency, that when she fell her noticeable injuries were those affecting her head, arm and hand, while those which developed after the influenza affected particularly her appendix, her right ovary and Fallopian tubes, and it was chiefly or altogether these later afflictions, not those of her head, arm and hand, which repeatedly con-

fined her to a hospital and terminated her career as a wage earner. There was sufficient evidence to support either view as to the proximate cause of plaintiff's condition, and it was the jury's duty to decide from the evidence whether the plaintiff's physical disabilities were the consequence of her fall at the bank in 1920 or of her attack of influenza in 1922, and that duty of the jury could not be discharged by returning the answer "Doubtful" to the special question propounded to them, No. 14. So long as it is doubtful whether the fall or the "flu" was the proximate cause of plaintiff's afflictions the bank cannot be required to pay plaintiff $10,000 or any other sum. That question cannot be permitted to remain doubtful. That doubt must be dissipated. It must be established to the satisfaction of an impartial jury that plaintiff's injuries are the natural consequences of the fall which she received on the bank floor in December, 1920, together with the other material allegations of her petition, or she cannot recover.

The judgment of the district court is reversed and the cause is remanded for a new trial.