No. 30,883.

EDWARD ATYEO and A. H. ROPFOGEL, *Appellees*, v. THE LEIDIGH & HAVENS LUMBER COMPANY, doing business as the Kansas Lumber Company, *Appellant*.

(18 P. 2d 118.)

Opinion filed January 28, 1933.

*Gilbert H. Frith* and *O. R. Stites*, both of Emporia, for the appellant.
*E. H. Rees* and *O. T. Atherton*, both of Emporia, for the appellees.

The opinion of the court was delivered by

HARVEY, J.: Plaintiffs sued for damages alleged to have resulted

from a breach of contract of purchase of brick to be used in a building. The jury answered special questions and returned a general verdict for plaintiffs. Defendant moved for judgment in its favor on the answers to the special questions, notwithstanding the general verdict. The motion was overruled, and defendant has appealed from that ruling. The evidence has not been brought up, and no complaint is made of instructions. The sole question presented is whether the answers to the special questions are in conflict with the general verdict. If so, the general verdict cannot stand. (R. S. 60-2918; *Commerce Trust Co. v. Pioneer Cattle Loan Co.,* 120 Kan. 712, 715, 244 Pac. 840.) However, it is the duty of the trial court and of this court to harmonize the answers to special questions with the general verdict if that reasonably can be done. (See *Hollingsworth v. Berry,* 111 Kan. 730, 732, 207 Pac. 841, and cases there cited.)

To determine the questions before us we look to the pleadings, answers to the special questions, and general verdict. Briefly, the petition alleged plaintiffs, being the owners of two lots at the corner of Commercial street and Fifth avenue in the city of Emporia, and in the business section of the city, in 1929 began the construction of a brick building thereon and bought large quantities of the building material from defendant, a part of which consisted of face brick for use in the north and west walls of the building. Defendant's manager was told and understood the purpose for which the brick was to be used and produced samples of brick from which a selection was made. Plaintiffs' order called for number one face brick of the best quality, and defendant's manager represented and warranted to plaintiffs "that the brick so purchased and delivered by defendant would be number one face brick of the best grade;" and "warranted that such brick would be satisfactory to the plaintiffs, and that the defendant would 'stand behind' the purchase;" that the brick was purchased in reliance on such express warranty. The building was completed in February, 1930. Early in the spring of 1930 plaintiffs discovered that a large number of the brick were scaling off, or otherwise disintegrating, and they so advised defendant, whose manager examined the walls and advised plaintiffs to wait and watch developments through the winter season of 1930 and 1931; that within such period the condition became worse. Defendant frequently examined the building and had representatives of the manufacturers of the brick examine them. Plain-

tiffs further allege that the defects were latent and could not have been discovered until several months after the walls were completed; that with the passage of time the condition of the walls gets worse, and at the time of the filing of the petition in this case twenty-five per cent of the brick in the walls appeared defective, by reason whereof the appearance of the building is damaged and the strength and stability of the outside walls impaired; that the brick has the appearance of being an inferior grade of soft brick; that repeatedly defendant, through its local manager, has stated to plaintiffs that it would stand behind the plaintiffs and give relief from the defective condition of the walls, and on one occasion stated that if necessary to give satisfaction "would tear out the two walls and rebuild them" at its own expense; that, notwithstanding the representations and warranties when the brick were purchased, the condition of the walls, and the advice and promises later made, defendant had done nothing.

Defendant in its answer admitted that plaintiffs own the real property described; that they purchased from the defendant face brick which were used in the north and west walls of the building, and that the order placed with defendant called for number one face brick, and denied all other material allegations of the petition.

In answering special questions the jury found there were 1500 defective brick in the walls of the building at the time of the trial; that such defective brick could be replaced with good brick, leaving the walls in substantially the same condition as if the brick had been good in the first instance, and that the cost of making such replacement would be $675. No point is made in this appeal with respect to these answers. The question and answer which give rise to the appeal are as follows:

"Q. Are the defects in the brick in question caused by inherent defects in the brick themselves which existed when the brick were delivered to plaintiffs, or do such defects as now appear result from some other cause or causes? A. Inherent defects in brick possible, but evidence not conclusive."

Appellant contends, with much reason, that the answer demonstrates that the jury was unable to determine from the evidence whether the defects apparent in the brick at the time the action was brought and at the time of the trial were inherent defects in the brick which existed when the brick were delivered to plaintiffs; that the answer on that point is similar to an answer, "We don't

know," and is tantamount to the answer "No" as to the party on whom the burden of proof rests, citing *Phillips v. Commercial Nat'l Bank*, 119 Kan. 339, 239 Pac. 984; *Pioneer Trust Co. v. Combs*, 123 Kan. 356, 255 Pac. 81, and allied cases. Appellant argues that the point in issue at the trial was whether the brick were inherently defective at the time they were delivered to plaintiffs; that the burden of proof was on plaintiffs to establish that fact before they could recover; that the jury failed to find that fact existed, and hence it is argued that plaintiffs cannot recover. This argument overlooks the second element of the warranty alleged in plaintiffs' petition; namely, that the brick would be satisfactory for the purpose for which they were being used. Plaintiffs specifically alleged that defendant warranted: (1) That the brick would be number one face brick. Defendant in its answer admitted it was to furnish number one face brick. Hence, no controversy on that point was raised by the proceedings. (2) That the brick would be satisfactory brick to use in the walls, and that defendant would "stand behind" that warranty. The general denial in defendant's answer put that question in issue. Plaintiffs allege that when the brick were discovered to be defective and not satisfactory defendant recognized that it had made such a warranty and its obligation by reason thereof, and promised to make good, which promises it had failed to carry out. We can readily understand how plaintiffs, in purchasing the brick, would be more interested in having a warranty that the brick would be satisfactory for the purpose for which they were being purchased and used than they would be in any classification, as number one, which might be given to brick by material-men or manufacturers. In other words, perhaps they wanted satisfactory results as distinct from mere classification of kinds of brick. It was for this purpose they asked and obtained a warranty of the utility of the brick sold for the purposes for which they were to be used. This is a matter the parties were competent to embody in their contract. The general verdict was a finding of the jury for plaintiffs on that issue. In view of this it becomes immaterial whether the defects which existed at the time the action was brought, or at the time of the trial, were caused by latent, inherent defects existing when the brick were sold, or were caused by some condition which existed after the brick were delivered to plaintiffs.

We are told in the oral argument and in the briefs that the wit-

nesses, even the experts in the manufacture of brick, were unable to say what causes defects, such as were shown to exist, sometimes to appear in brick; that manufacturers and their expert chemists have given much study to the question and have been unable to determine whether such defects are inherent in the brick when placed in the wall or are caused by something in the mortar or atmospheric conditions after the wall is built. If that was the substance of the testimony this question should never have been submitted to the jury. Had it been answered definitely "yes" or "no" the answer would have been purely speculative. It is folly to submit a special question to a jury when there is no evidence from which it could be answered. (*Mayes v. Kansas City Power & Light Co.*, 121 Kan. 648, 656, 249 Pac. 599.) While the submission of this question was objected to, there is no cross appeal. We mention this simply to point out the futility of expecting a jury to answer a question which no one can answer.

In order to recover in this case plaintiffs were not compelled to show what caused the brick to crack and scale. Plaintiffs allege that the brick were warranted to be satisfactory in the walls; that this warranty was broken, to their damage. The fact that the jury could not tell what caused the defect in the brick does not require the setting aside of the general verdict. Particularly is that true when we are told no one could tell from the evidence what caused such defect.

The judgment of the court below is affirmed.

THIELE, J., not participating.